WIRTZ, SECRETARY OF LABOR *v.* LOCAL UNION
NO. 125, LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA,
AFL–CIO.

No. 58.  Argued November 8–9, 1967.—Decided January 15, 1968.

*Louis F. Claiborne* argued the cause for petitioner. With him on the brief were *Solicitor General Marshall, Acting Assistant Attorney General Eardley, Richard A. Posner, Alan S. Rosenthal, Robert V. Zener, Charles Donahue, James R. Beaird* and *Beate Bloch.*

*Mortimer Riemer* argued the cause and filed a brief for respondent.

*J. Albert Woll, Laurence Gold* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging affirmance.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This is a companion case to No. 57, *Wirtz* v. *Local 153, Glass Bottle Blowers Assn., ante,* p. 463. Petitioner, the Secretary of Labor, filed the action in the District Court for the Northern District of Ohio, Eastern Division, under § 402 (b) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U. S. C. § 482 (b). His complaint challenged the validity of a general election of union officers conducted by the respondent Local Union on June 8, 1963, and the validity of a runoff election for the single office of Business Representative made necessary by a tie vote for that office at the June 8 election. The complaint alleged, in part, violations of § 401 (e), 29 U. S. C. § 481 (e), in permitting members not "in good standing" to vote and to run for office on both occasions. However, the only allegation that internal union remedies had been exhausted, as is required by § 402 (a), was in regard to the runoff election of July 13; the complaint stated that the loser in the runoff elec-

tion, one Dial, protested and appealed to the General Executive Board of the International Union concerning the conduct of that election and, having received a final denial of his protest by the General Executive Board, filed a timely complaint with the Secretary. The District Court held that the omission in the complaint of an allegation that a member complained internally about the conduct of the June 8 general election was fatal to the Secretary's action addressed to that election and dismissed that part of the complaint. 231 F. Supp. 590. The Secretary appealed to the Court of Appeals for the Sixth Circuit. During pendency of the appeal, respondent Local conducted its next regular triennial election of officers. The Court of Appeals thereupon vacated the judgment of dismissal and remanded to the District Court with instructions that the portion of the Secretary's complaint dealing with the June 8 election be dismissed as moot. 375 F. 2d 921.[1] We granted certiorari. 387 U. S. 904. In light of our decision today in *Wirtz* v. *Local 153, supra,* the action of the Court of Appeals must be reversed; we there held that ". . . the fact that the union has already conducted another unsupervised election does not deprive the Secretary of his right to a court order declaring the challenged election void and directing that a new election be conducted under his supervision." At 475–476.

In the circumstances we might remand to the Court of Appeals to decide the merits of the Secretary's appeal.

---

[1] The order of dismissal in the District Court was entered July 14, 1964. On April 18, 1966, the District Court entered an order granting the Secretary's motion for summary judgment regarding the portion of his complaint directed to the runoff election of July 13, 1963, for the office of Business Representative. The runoff was conducted under the Secretary's supervision on June 11, 1966, the same day the union conducted the unsupervised intervening election. Dial lost the runoff.

480

The issue on the merits is whether the District Court erred in holding that the Secretary in his suit may not challenge the alleged violations affecting the general election of June 8 because Dial specifically challenged only the runoff election of July 13 with respect to the office of Business Representative. The merits of this question have been fully briefed and argued in this Court and the underlying issue of statutory construction has already been the subject of several and conflicting rulings by various federal courts.[2] The interests of judicial economy are therefore best served if we proceed to resolve this important question now.

Respondent Local is governed by the Constitution and the Uniform Local Union Constitution of the Laborers' International Union of North America. Under the Uniform Local Union Constitution as it existed during the period relevant here, a member's good standing was lost by failure to pay membership dues within a specified grace period, and the member was automatically suspended without notice and with loss of all membership rights except the right to readmission (but as a new member) upon payment of a fee. The eligibility of voters and candidates in both elections in this case was determined by reference to a report to the International

[2] Compare *Wirtz v. Hotel Employees Union, Local 6,* 381 F. 2d 500; *Wirtz v. Local 9 et al., IUOE,* 366 F. 2d 911; *Wirtz v. Local 174, Musicians,* 65 L. R. R. M. 2972; and *Wirtz v. Local 450, IUOE,* 63 L. R. R. M. 2105, which more or less support the view of the District Court herein, with *Wirtz v. Local 406, IUOE,* 254 F. Supp. 962; *Wirtz v. Local 705, Hotel Employees,* 63 L. R. R. M. 2315; and *Wirtz v. Local 169, Hod Carriers,* 246 F. Supp. 741, which support a broader view.

These conflicting views particularly justify our resolution of the question without remanding to the Court of Appeals. In contrast, the issue in No. 57, *Wirtz v. Local 153, supra,* which we did remand to the Court of Appeals, was whether a standard not questioned by any party was properly applied to the particular facts.

Union of the names of members for whom a per capita tax had been paid. This report included some 50 to 75 members who were delinquent in the payment of their Local dues and had therefore actually lost good standing under the provisions of the Uniform Local Union Constitution. The cause of this patent disregard of the Local's own constitution was the practice of its Secretary-Treasurer of paying from Local funds the per capita tax of delinquent members selected by him, thus making it appear on the per capita tax report that those members had met their dues obligations when in fact they had not.[3] The Secretary's investigation disclosed that approximately 50 of the members voting in the June 8 general election and approximately 60 voting in the July 13 runoff election were ineligible to vote; and that 16 of the 27 candidates for office in the general election, including Dial's opponent who ultimately won the runoff, were ineligible for the same reason.

The question is one of statutory construction and must be answered by inference since there is lacking an explicit provision regarding the permissible scope of the Secretary's complaint. On the facts of this case we think the Secretary is entitled to maintain his action challenging the June 8 general election because respondent union had fair notice from the violation charged by Dial in his protest of the runoff election that the same unlawful conduct probably occurred at the earlier election as well.[4]

---

[3] The International Constitution required respondent Local to remit to the International a per capita tax payment of $1 per member per month. These payments were to be made only for members who had in fact made current payment of their dues to the Local.

[4] See *Wirtz* v. *Local 169, Hod Carriers, supra,* n. 2, at 751–753.

Although the eligibility of Dial's opponent in the runoff was an issue before the District Court on the Secretary's motion for summary judgment, the judgment was granted on the ground of voter ineligibility; that judgment is not before us.

We therefore need not consider and intimate no view on the merits of the Secretary's argument that a member's protest triggers a § 402 enforcement action in which the Secretary would be permitted to file suit challenging any violation of § 401 discovered in his investigation of the member's complaint.

We reject the narrow construction adopted by the District Court and supported by respondent limiting the Secretary's complaint solely to the allegations made in the union member's initial complaint. Such a severe restriction upon the Secretary's powers should not be read into the statute without a clear indication of congressional intent to that effect. Neither the language of the statute nor its legislative history provides such an indication; indeed, the indications are quite clearly to the contrary.

First, it is most improbable that Congress deliberately settled exclusive enforcement jurisdiction on the Secretary and granted him broad investigative powers to discharge his responsibilities,[5] yet intended the shape of the enforcement action to be immutably fixed by the artfulness of a layman's complaint which often must be based on incomplete information. The expertise and resources of the Labor Department were surely meant to have a broader play.[6] Second, so to constrict the Secretary

---

[5] The Secretary's authority under § 601, 29 U. S. C. § 521, both supplements his investigative mandate under § 402 (b) and authorizes inquiry without regard to the filing of a complaint by a union member. But when the Secretary investigates pursuant to § 601 without a member's complaint, his remedy is limited to disclosure of violations discovered. Whether violations of § 401 uncovered by a § 601 investigation may be the predicate of a member's protest to the union and an enforcement proceeding under § 402 if the union denies relief is a question we need not and do not reach in this case.

[6] Senator Kennedy's reference to the Secretary as the complaining "union member's lawyer," 104 Cong. Rec. 10947, Leg. Hist. 1093

would be inconsistent with his vital role, which we emphasize today in *Wirtz* v. *Local 153, supra,* in protecting the public interest bound up in Title IV. The Act was not designed merely to protect the right of a union member to run for a particular union office in a particular election. Title IV's special function in furthering the general goals of the LMRDA is to insure free and democratic union elections, the regulations of the union electoral process enacted in the Title having been regarded as necessary protections of the public interest as well as of the rights and interests of union members.

We can only conclude, therefore, that it would be anomalous to limit the reach of the Secretary's cause of action by the specifics of the union member's complaint. In an analogous context we rejected such a limiting construction of the National Labor Relations Board's authority to fashion unfair labor practice complaints. *NLRB* v. *Fant Milling Co.,* 360 U. S. 301, 306–309; *National Licorice Co.* v. *NLRB,* 309 U. S. 350, 369.[7]

Respondent argues, however, that the spirit and letter of the statutory requirement that the member first exhaust his internal union remedies before the Secretary may intervene compels the suggested limitation. It contends that even to allow the Secretary to challenge the earlier election for the same violation established as having occurred in the runoff election would be inconsistent with Congress' intention to allow unions first opportunity to redress violations of § 401. This argument is not persuasive.

---

(Dept. Labor 1964), does not support the District Court's conclusion. The lawyer's function is to use his skills to give shape and substance to his client's often incompletely expressed complaint.

[7] The fact that the National Labor Relations Act does not require prior exhaustion of internal union remedies does not destroy the analogy; nothing in our holding today dispenses with the exhaustion requirement of § 402 (a).

It is true that the exhaustion requirement was regarded by Congress as critical to the statute's objective of fostering union self-government. By channeling members through the internal appellate processes, Congress hoped to accustom members to utilizing the remedies made available within their own organization; at the same time, however, unions were expected to provide responsible and responsive procedures for investigating and redressing members' election grievances. These intertwined objectives are not disserved but furthered by permitting the Secretary to include in his complaint at least any § 401 violation he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint.

Here the Secretary sought to challenge the June 8 general election, alleging that the same unlawful conduct occurring in the runoff affected the general election held only five weeks before. Dial's complaint had disclosed the fraudulent practice with respect to the runoff, and he was apparently able to prove at the hearing before the General Executive Board that that practice enabled nine ineligible members to vote in the runoff election; but his protest was denied because he had lost by 19 votes. The Secretary's investigation, however, discovered that a much larger number of ineligible members had been permitted to vote in that runoff election and that the Secretary-Treasurer responsible for the falsification prepared the per capita tax reports used to determine the eligibility of voters and candidates at both elections. Yet in the face of Dial's evidence raising the almost overwhelming probability that the misconduct affecting the runoff election had also occurred at the June 8 election, the union insists that it was under no duty to expand its inquiry beyond the specific challenge to the runoff election made by Dial. Surely this is not the responsible union self-government contemplated by Congress in allowing the

unions great latitude in resolving their own internal controversies.  In default of respondent's action on a violation which it had a fair opportunity to consider and resolve in connection with Dial's protest, the Secretary was entitled to seek relief from the court with respect to the June 8 election.  Again, Congress, having given the Secretary a broad investigative power, cannot have intended that his right to relief be defined by a complaining member's ignorance of the law or the facts or by the artlessness of the member's protest.

Because the complaint as to the June 8 election was dismissed for deficiency in pleading, the factual allegations have not been tried.  We therefore reverse the judgment of the Court of Appeals and remand to that court with direction to enter a judgment reversing the District Court's judgment of dismissal and directing further proceedings by that court consistent with this opinion.

*It is so ordered.*

Mr. Justice Marshall took no part in the consideration or decision of this case.