George P. SHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL UNION 1299, UNITED STEEL WORKERS OF AMERICA, AFL–CIO, and United Steel Workers of America, Defendants.

Civ. A. No. 30955.

United States District Court, E. D. Michigan, S. D.

March 4, 1970.

Thomas H. Barnard, U. S. Dept. of Labor, Detroit, Mich., for plaintiff.

Carl B. Frankel, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

Plaintiff brings this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401 et seq). Defendant Local 1299, United Steel Workers of America, AFL-CIO, is, and at all times relevant to this action has been, an unincorporated association, and a labor organization engaged in an industry affecting commerce, within the meanings of § 3(i) and § 3(j) of the act. 29 U.S.C. § 402(i) and § 402(j). Defendant Local 1299 is chartered by and subordinate to defendant in intervention, the United Steel Workers of America, AFL-CIO, an International Labor Organization engaged in an industry affecting commerce within the meaning of the Labor-Management Reporting and Disclosure Act. Defendant Local 1299, pursuant to the constitution of the International and its own by-laws held nominations of officers on June 14, 1967, and an election of officers on June 28, 1967, which nominations and election were subject to the provisions of Title IV of the act (29 U.S.C. § 481 et seq). Prior to filing this complaint, a member in good standing of defendant Local 1299, properly invoked and exhausted his internal union remedies, whereupon a timely complaint was filed with plaintiff in accordance with § 402 (a) of the act (29 U.S.C. § 482 [a]). Pursuant to § 402(b) of the act (29 U.S.C. § 482 [b]), plaintiff proceeded to investigate the complaints filed by the members in good standing, and as a result of facts shown by this investigation, initiated this litigation asserting that there was probable cause to believe that violations of Title IV of the act occurred and had not been remedied at the time of institution of this suit. The secretary alleged that defendant violated Title IV of the act (29 U.S.C. § 481) in the following respects:

"(1) Defendant denied its members in good standing the right to be candidates and hold office by the imposition of unreasonable qualifications in violation of § 401(e) of the act (29 U.S.C. 481 [e]);

(2) Defendant denied its members in good standing a reasonable opportunity to nominate, and the right to vote for, and otherwise support candidates of their choice, in violation of § 401(e) of the act (29 U.S.C. 481 [e]);

(3) Defendant, in violation of § 401 (c) of the act (29 USC 481 [c]), failed to provide adequate safeguards to insure a fair election; and

(4) Defendant violated § 401(g) of the act (29 USC 481 [g]), in that its funds were used to promote the candidacy of persons for election as officers of defendant." (Plaintiff's complaint ¶ 10).

Defendant Local Union 1299 answered plaintiff's allegations by stating that:

"Defendant and International were not afforded notice of, or a reasonable opportunity to correct, the matters alleged in paragraph 10 of the complaint, in that said matters were not made the subject of protest within the union; accordingly, as to such matters, the requirements of § 402 (a) of the act, 29 USC § 482(a) have not been met, the secretary lacks authority to bring this action, and this Court lacks jurisdiction."

Defendant Local 1299 subsequently admitted, however, violation of § 401(c) of the act (29 U.S.C. § 481 [c]) which section calls for providing of adequate safeguards to insure a fair election. To remedy this situation, Local 1299 conducted a special election for the office of treasurer on April 18, 1968. This election was subsequent to the initiation of the secretary's suit in this action on March 1, 1968. (Defendant had stipulat-

ed to two extensions of time in which the secretary could bring suit re this election.)

## ISSUES

The issues to be decided in this law suit are as follows:

(1) May the Secretary of Labor complain of Title IV violations in a suit in Federal Court where such violations were not raised specifically by any member in the union's internal protest procedure, in particular that question regarding "reasonable qualification" for candidacy;

(2) If the secretary may raise the issue regarding "reasonable qualification", did the union's requirement that a candidate for office attend one-half ($\frac{1}{2}$) the monthly meetings in a three year period exceed the reasonableness required by the act;

(3) Was publication of the newspaper prior to the time of the June 28, 1967 election violative of § 401(g) of the act (29 USC § 481(g).

(4) May the Secretary of Labor raise a matter which the union remedied by conducting a special re-run election of which the secretary was aware prior to instituting this law suit.

## FINDINGS OF FACTS AND CON-CLUSIONS OF LAW

As to the first issue raised by this matter, the plaintiff, Secretary of Labor, argues that in a suit filed under § 402 of the Labor-Management Reporting and Disclosure Act to set aside a union election, the Secretary of Labor may include all violations of § 401 discovered by his investigation, as long as the union had fair notice of and a fair opportunity to redress said violations, regardless of whether or not said violations were included in the internal protest of the complaining union members. In the recent Supreme Court decision of Wirtz v. Local Union No. 125, Laborers' Inter-national Union of North America, A.F.L.-C.I.O. (1968) 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 the Court specifically stated that it intimated:

" * * * no view on the merits of the Secretary's argument that a member's protest triggers a § 402 enforcement action in which the Secretary would be permitted to file suit challenging *any violation* of § 401 discovered in his investigation of the member's complaint." (Emphasis ours) p. 482, 88 S.Ct. p. 641.

However, the Supreme Court went on to explain that:

"By channeling members through the internal appellate processes, Congress hoped to accustom members to utilizing the remedies made available within their own organization; at the same time, however, unions were expected to provide responsible and responsive procedures for investigating and redressing members' election grievances. These intertwined objectives are not disserved but furthered by permitting the Secretary to include in his complaint at least any § 401 violations he has discovered *which the union had a fair opportunity* to consider and redress in connection with a member's initial complaint." (Emphasis ours) p. 484, 88 S.Ct. p. 642.

It becomes necessary, therefore, to look to those protests originally lodged with the Local Union and International in an effort to determine whether or not the union had been provided fair notice of the complaints presented here.

In this regard, there appears to be no dispute between the parties that the complaint regarding failure to provide safe-guards, See § 401(c) of the Act [29 U.S.C. § 481(c)] was presented by the members in good standing in their original protest to the union. Therefore, there has been an exhaustion of internal remedies in this regard pursuant to § 402(a) of the Act. The dispute on the question of exhaustion of internal remedies arises concerning the plaintiff's complaint of defendant's violation of § 401

(e) of the act (29 U.S.C. § 481 [e]) and 401(g) of the Act.

■ It is the position of the plaintiff that timely complaints regarding violation of § 401(e) (29 U.S.C. § 481 [e]) were made to the union and therefore that the union had been provided "fair notice" of the alleged violation; it is the position of defendants in this matter that nowhere in the course of the internal union complaints was there any notice regarding alleged violation of § 401(e) of the Act. Whether or not the union had been provided "fair notice" regarding the alleged violation of § 401(e), so as to allow the secretary to bring suit on that basis, becomes the first fact to be determined prior to any consideration on the merits of the complaint.

In this regard, the testimony reveals that along with the internal complaints filed by members in good standing regarding the failure to provide safeguards (29 U.S.C. § 481 [c]) (and the misuse of union funds in the election (29 U.S.C. § 481 [g])) there were additional complaints brought before the union regarding the criteria employed in determining the eligibility of certain members as non-officer candidates prior to the June 28, 1967 election. It was the complaint of these members, who the Election Committee had declared ineligible for nomination to the positions sought, that there had been a failure properly to apply the constitution and by-laws of the Local Union and the International regarding the meeting attendance requirements. Defendant argues that a complaint regarding alleged failure properly to apply or implement attendance requirements does not amount to a challenge to the attendance requirements themselves. Plaintiff, on the other hand, asserts that the challenge by these members to the application of the attendance requirements provided the union with fair notice regarding the reasonableness of the requirements as a whole, thereby exhausting available internal remedies and allowing plaintiff, in this action, to litigate the reasonableness of those requirements.

■ From the testimony and exhibits presented in this proceeding, it is apparent that the union was aware at the time of the initial complaint by these members that the challenge was as much to the attendance requirement itself as it was to the application of that requirement to particular members. The members questioned the very fairness of the meeting attendance rule, as well as asserting that it was unfairly applied. Therefore, no matter how inaccurately or incompletely the members worded their complaint, this Court finds that the union was apprised of the underlying challenge to the attendance requirement as a whole and therefore had fair notice of that complaint. In accord with the Supreme Court's holding in Wirtz v. Local Union No. 125, Laborers' International Union, *supra*, this Court then has jurisdiction to entertain the secretary's complaint regarding the reasonableness of the International's Constitution and Local's By-laws specifying the qualifications for candidates.

II. The Labor-Management Reporting and Disclosure Act § 401(e) [29 U.S.C. § 481(e)] reads in part:

"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) * * *."

At the time of the June 28, 1967 election, the constitution of the defendant International set forth certain criteria for eligibility as a candidate; the constitution stated that:

"No member shall be eligible for election as a local union officer or grievance committeeman unless: * * *

(c) he has attended at least one-half (½) of the regular meetings of his local union for thirty-six (36) months previous to the June, 1967 election, unless his union activities

or working hours prevented his attendance." Article VII, § 9.

At the time of the June 28, 1967 election, the by-laws of Local 1299 provided in part that:

"No member shall be eligible for election as an officer or grievance committeeman unless: * * *

(c) he has attended at least one-half (½) of the regular meetings of his local union for thirty-six (36) months previous to the election unless his union activities or working hours prevented his attendance." Article IV, § 6.

It is the contention of the secretary that such attendance requirement constitutes an unreasonable qualification for eligibility to be a candidate and to hold office, and therefore is in violation of § 401(e) of the act.

■ As is abundantly evident from the testimony and exhibits presented to the Court, the interpretation of the attendance requirement for the June, 1967 election was initially vague and imprecise. Because of reasons totally irrelevant to this law suit, there had not been a three-year period during which regular meetings had been held and upon which the thirty-six (36) month period mentioned in the International's constitution and the Local's by-laws could be based. Therefore, the meeting attendance requirement was applied by requiring that a member, to be eligible as a candidate and to hold office, must have attended at least one-half (½) of the regular meetings of Local Union 1299 which had been held between the period July, 1965 and May, 1967, provided that a member who failed to attend a meeting because union activities or working hours prevented his attendance would be credited as if he had attended the meeting. Between the dates of July, 1965 and May 1967 there had been only twenty-three (23) regular meetings held by the membership of Local 1299. The decision was made to exclude those meetings conducted prior to July, 1965 and also to exclude the June 14, 1967 nomination meeting on the be-lief that the nomination meeting did not constitute a regular meeting. It was the responsibility of the Election Committee to determine whether the members nominated at the June 14, 1967 nomination meeting met the eligibility requirements of the union by having credit for attendance at at least twelve (12) of the regular monthly membership meetings conducted by defendant Local 1299 between the period designated above. Such a check was made by use of the attendance rosters signed by members when arriving at the place of assembly on the evening of a meeting, as well as by checking the company records to determine which members may have been absent from a membership meeting by reason of work. Upon a review of these records, namely the attendance rosters and the company work records, certain individuals were found to have had attendance at an insufficient number of meetings and were disqualified and held to be ineligible for candidacy for failure to meet the attendance requirements. One individual was found to be one meeting short of the necessary number to achieve eligibility.

Despite the maze of opinions in this matter from members of the union itself as to what did and did not constitute a regular meeting of the union and therefore what meetings did and did not count for attendance requirement purposes, as well as conflicting information regarding the accuracy of the sign in rosters and the company's work records, the issue before the Court in this regard involves the secretary's attack on the 1967 election at Local 1299 on the grounds that the meeting attendance requirement was *applied* in that election. However, if that requirement was reasonable and uniformly imposed, the mere fact that it was applied amounts to no violation of § 401(e) of the act.

Based on the testimony presented during the course of this proceeding, it is the finding of this Court that the attendance requirements as construed for the 1967 election were uniformly imposed. There was no testimony and no proof that credit was given to some members

for certain meetings and denied other members for those same meetings. The requirement was that a member had attended twelve (12) of the previous twenty-three (23) meetings; that requirement did not vary from individual to individual nor were certain meetings counted for some members and disregarded for others. Even if the decision was made to follow the by-laws precisely and use one-half (½) the meetings out of the previous thirty-six (36) months, there would have been no great change in the number of meetings to be counted as there had been no regular meetings in the June, 1964 and July, 1965 period. Only twenty-three (23) meetings had been held even in the thirty-six (36) months period prior to the June, 1967 election. This Court has been presented no clear and convincing evidence that certain members were not given credit for meetings attended or others credited with meetings not attended. Without yet deciding the reasonableness of the attendance rule, this Court first finds that there is no evidence to substantiate that the rule was not uniformly imposed.

The only question to be decided in this regard, therefore is that concerning the reasonableness of the particular attendance requirement as set forth by the International's constitution (Article VII, § 9) and the by-laws of Local 1299 (Article IV § 6). The testimony in this matter indicated and this Court finds that the purpose of the meeting attendance rule was and is to accomplish legitimate union goals, namely, to provide a constant check upon the growth of unbridled control of the local's affairs by incumbent officers, as well as to provide a means of familiarizing rank and file members of that which is entailed in the management of the local's affairs. The Department of Labor in an interpretative manual of the Labor Management Reporting and Discovery Act stated that:

"Qualifications reasonably designed to assure that candidates have participated in the affairs of the union and are sufficiently familiar with the industry in which the union operates, would not be considered unreasonable in themselves." (See the manual captioned "Attendance and Previous Experience" paragraph 422.250 "Participation in Union Affairs".)

This same manual, also states:

"A provision requiring a member to have attended at least one-half (½) of the regular meetings of his local union for twenty-four (24) months previous to the election before he may be eligible to hold office, is not unreasonable if it is applied fairly and uniformly to all members.

It might well be unreasonable, however, in circumstances in which attendance presented an unusual degree of difficulty for a significant proportion of the membership; as for example, where the local had an extensive geographical jurisdiction." (See paragraph 422.206 "Twelve of Twenty-Four Meetings May be Reasonable").

If the Department of Labor considers twelve out of twenty-four meetings not to be an unreasonable qualification in and of itself, it would seem fair and logical to assume that the Department would consider twelve out of twenty-three or eighteen out of thirty-six meetings equally reasonable.

The act itself specifies that every local union organization shall elect its officers not less often than once every three (3) years (§ 401[b]); Local Union 1299 has apparently geared its elections on a three-year basis and has set its attendance requirements accordingly. Therefore, this Court finds that the numerical requirement set forth by the International's constitution as well as the local's by-laws regarding attendance at meetings is not, standing alone, an unreasonable qualification to be met prior to eligibility for candidacy to hold office.

As there has been no showing that the rule was not uniformly imposed, the only determination remaining is whether or not the attendance rule, in light of surrounding circumstances, worked an unfairness on certain factions of the total membership. In this regard, this Court

has been presented with insufficient evidence on which to find that there has resulted by virtue of those attendance requirements a discriminatory and adverse effect on a minority of the membership of said local. The secretary has, in addition, failed to convince this Court that the absence of a more liberal excuse provisions makes the attendance requirement unreasonable especially in light of the fact that the union allows essentially automatic excuses without any justification for half of the total meetings held. The meeting attendance requirement does not become unfair and unreasonable merely because the officers are provided some inducement for attendance whereas the rank and file are not; the motive behind attendance at a meeting is not a determinative factor in deciding whether or not the attendance requirement is reasonable, and interest in union affairs should provide sufficient motive for rank and file. Therefore, it is the finding of this Court that the meeting attendance requirements of Local Union 1299 are not unreasonable, that the requirements were enforced uniformly, and therefore that the implementation of those requirements are not in violation of § 401(e) of the act.

III. The secretary contends that the expenditure of union funds to publish printed material which discriminatorily promoted the candidacy of incumbent officers violated § 401(g) of the act.

 As stated above, defendant argues that nowhere in the course of the internal complaints filed with the union was there any assertion of a violation of § 401(g) [29 U.S.C. § 481(g)] of the act. However, the facts indicate that defendants were made aware and put on notice of each irregularity discovered by the secretary in the course of his investigation, and the charges he proposed to bring, by way of meetings held and letters sent to defendants prior to the filing of this complaint. In addition to the fact that the defendants were put on notice regarding these alleged violations, time was available for remedying the situation even if such would have called for a supervised re-run election. No remedy was made. In view of the notice given and the opportunity to correct the irregularities discovered which may have affected the outcome of the election, this Court holds that the secretary may include in this complaint assertions regarding violation of § 401(g) of the act, and this Court has jurisdiction to consider such inasmuch as there has been compliance with the exhaustion provisions of the act (402[a]). (See Wirtz v. Local Union No. 1622 [D.C., 1968] 285 F.Supp. 455, 462).

The Labor-Management Reporting and Disclosure Act states that:

"No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, actual statement of issues not involving candidates, and other expenses necessary for the holding of an election." (29 U.S.C. § 481 [g]).

In this regard, the secretary contends that the June 9, 1967 issue of the local's newspaper did in fact "promote a candidacy" which promotion did affect the outcome of the election. The plaintiff points out and the evidence substantiates that the union had published no similar paper in the previous five (5) years, and that it was the decision of the incumbent officers of Local 1299 to publish the June 9, 1967 paper; there is no question that funds of the local union were spent to publish, mail and distribute the paper to the membership. In addition, the opposition had no knowledge of the fact that the newspaper was being published until such time as they received a copy of it.

 It is the position of the defendants in this regard that the June 9, 1967 edition of the newspaper was published to comply with the election notice re-

quirement of § 401(e) of the act (29 U.S.C. § 481[e]). It is further the position of the defendant Local 1299 that newspapers have been the traditional method of notifying members of an election. At the same time defendant points out that when the paper was published on June 9, 1967 no challenger had announced his candidacy in opposition to incumbent officers, and consequently the newspaper could not address itself to any publicity regarding those candidacies.

This Court does not look with favor upon the decision of the incumbent officers of Local 1299 prior to the election of June, 1967 to publish a newspaper ostensibly as a notice of the forthcoming election. This Court does not believe, as defendants suggests, that the newspaper edition was devoted almost exclusively to timely notices, reports and explanations involving current matters of interest to the members. To the contrary, the names of incumbent officers appear repeatedly in various contexts and under variety of pictures of those officers. However, despite the Court's serious reservations concerning the incumbents' intent in publishing this newspaper, this Court does not find that the one publication in question here did, in fact, promote the candidacy of any person. There was introduced into evidence newspapers which had been published by the local prior to 1962; it is apparent from a review of those papers that incumbent officers are "newsworthy". In each of the papers published prior to 1962, information and stories concerning incumbent officers are prevalent. In many regards, this stands to reason as the paper concerns the items of interest regarding the affairs of the local which affairs are under the control of the incumbent officers. It appears, therefore, that the paper published on June 9, 1967 differed little in its format from those which had been published previously.

Though the motive of the officers may not have been the best at the time of publishing the June 9, 1967 edition, this Court finds that that paper did not promote the candidacy of those officers.

Therefore, though the union officers are to be severely reprimanded if their intent actually was to promote their own candidacy, this Court sincerely believes that such purpose was not clearly achieved through the publication of that paper, and consequently has not been convinced by a preponderance of the evidence that there was in fact a violation of § 401(g) of the act. The publication of this one newspaper, which publication did in fact include notice to the membership of the forthcoming election, did not amount to a "propaganda organ" to advance the candidacy of the incumbents; the situation here is not the same situation as that which may be found where union publications are more numerous, more frequent, more regular and provide greater coverage to one individual, or where funds are expended solely for campaign material.

IV. The remaining issue, then, is that concerning the effect and validity of the April 18, 1968 re-run election for treasurer conducted by Local 1299 in the absence of supervision by the secretary. The defendant union Local 1299 has, in the course of this litigation, readily admitted a violation of § 401(c) of the act (29 U.S.C. § 481[c]), in that it failed to provide "adequate safegards to insure a fair election" as to the office of treasurer. However, defendant local contends that the violation was remedied by a special re-run election for the office of treasurer held on April 18, 1968. Defendant Local 1299 points out that plaintiff was provided full notice and information regarding the re-run election and that such notice was received by plaintiff prior to commencement of this law suit on March 1, 1968, although the election itself was not held until subsequent to the filing of this law suit.

Plaintiff argues, on the other hand, that once a complaint has been filed alleging a violation of § 401 of the act, defendant cannot deprive the secretary of his right to a Court order declaring the challenged election void and directing the conduct of a new election under

his supervision by the mere act of conducting another unsupervised election.

§ 402(a) of the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 482) states:

"(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, * * *

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe."

 Inasmuch as defendant Local 1299 admitted a violation of § 401(c) of the act, this Court holds that such violation cannot be remedied subsequent to the secretary's institution of this litigation by the union's running of a special, unsupervised election. The unsupervised election, held April 19, 1968, did not cure the admitted violation of § 401 (c). See Wirtz v. Local 153, Glass Bottle Blowers Association (1968) 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705. The union cannot negate the secretary's power to supervise an election, once it has been shown that a violation of § 401 has occurred and may have affected the outcome of the election, by conducting another unsupervised election. As the Supreme Court stated in the case of Wirtz v. Local 153, Glass Bottle Blowers, *supra*:

"The notion that the unlawfulness infecting the challenged election should be considered as washed away by the following election disregards Congress' evident conclusion that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election." p. 474, 88 S.Ct. p. 649.

In view of defendants' admitted violations of § 401(c) of the act, this Court is of the opinion that the June, 1967 election as to treasurer must be set aside, that the special re-run election of April 18, 1968 for treasurer must be declared null and void, and that Local Union 1299 conduct, under the supervision of the secretary, an election for treasurer.

## CONCLUSIONS OF LAW

In view of the above it is the opinion and holding of this Court that it has jurisdiction of the subject matter and parties herein. This Court further holds that the Secretary of Labor may include in his complaint, filed pursuant to § 402 of the Labor-Management Reporting and Disclosure Act, violations of which the union did have fair notice and an opportunity to correct in connection with a member's internal union protest. It is the finding of this Court that the union was afforded fair notice and an opportunity to correct those complaints regarding the reasonableness and application of the meeting attendance rules. In

this regard, however, it is the finding of this Court that said meeting attendance rules were not shown to be unreasonable qualifications and consequently no violation of § 401(e) of the act has been established. In addition, it is this Court's finding that no violation of § 401(g) of the act with regard to the publication of the June 9, 1967 newspaper was established.

Finally, this Court holds, that defendants' admitted violation of § 401(c) of the act, affecting the office of treasurer, was not remedied by the special election conducted on April 18, 1968, as that was not a supervised election. See Wirtz v. Local 153, Glass Bottle Blowers, supra.

### ORDER

Therefore, it is ordered, that plaintiff's complaints of violations of § 401(e) and § 401(g) of the act be dismissed.

It is further ordered that the June, 1967 election of treasurer and the special re-run election be set aside and another election be held under the supervision of the secretary, as the defendant admitted violation of § 401(c) of the act which was not remedied prior to institution of this action.