See also, D.C., 371 F.Supp. 56.

**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**UNION de EMPLEADOS de los SUPERMERCADOS PUEBLO, Defendant.**

**Civ. No. 58-73.**

United States District Court, D. Puerto Rico.

Dec. 6, 1974.

U. S. Atty., Old San Juan, P. R., for plaintiff.

Federico A. Cordero, Santurce, P.R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This action was brought by the Secretary of Labor against defendant, Union de Empleados de los Supermercados Pueblo (hereinafter the Union), for violation of Title IV of Labor Management Reporting Disclosure Act (hereinafter LMRDA) of 1959, Title 29, United States Code, Section 401 et seq.

Jurisdiction is invoked pursuant to Section 402(b) of LMRDA, Title 29, United States Code, Section 482(b). The alleged facts are as follows: The defendant, the Union, was the exclusive bargaining representative of Pueblo Supermarket (a business affecting interstate commerce) as a result of an election for certification held on June 22, 1969. The Constitution of the Union in its Article XII as well as the Act provide for the election of union officials every three years. Filomeno Vargas, a member in good standing of the Union, protested the failure of the Union to carry out an election of officers of defendant's Executive Board; that having failed to receive a final decision within three calendar months, Mr. Vargas, on November 21, 1972, filed a complaint with the Secretary of Labor (hereinafter the Secretary) in accordance with Section 402(a) of the Act, Title 29, United States Code, Section 482; that after investigation of the complaint, plaintiff found probable cause to believe there was a violation of Section 401(b) of the Act, Title 29, United States Code, Section 481(b) and that it had not been remedied at the time of the institution of this suit.

Meanwhile, the Executive Board of the Union called for an assembly of the Union's members to nominate candidates to the different Board of Directors' positions. On July 5, 1974, the leadership of the Union tried to persuade Mr. Capestany, Director of the Puerto Rico area for Labor Management Service Administration to supervise the programmed elections but he declined the offer. On July 7, 1974, the assembly nominated the Union candidates and designated July 23, 1974 as the election date.

On July 19, 1974, the Executive Board made arrangements with a private firm to supervise the election to be held on July 23, 1974.

The elections were held in the appointed days, the results are contained in defendant's briefs.

The issue to be decided by this Court is whether the elections held by the Union under the supervision of a private firm cured the violation of the Act requiring elections to be held at least every three years and thus bars the Secretary from pursuing this action before this Court.

Plaintiff has filed a motion for summary judgment.

It is to be noticed that there is no discrepancy between the parties as to the facts which originated this action.

Both parties have agreed that the summary judgment may be adjudicated by this Court without the necessity of a trial. Summary judgment is proper and should be used to eliminate formal trials where only questions of law are involved. Molinos de Puerto Rico v. Sheridan Towing Company, 62 F.R.D. 172, 174 (D.C.P.R.1973).

Summary judgment is a procedural device which is used to avoid a useless trial and for promptly disposing of actions where there is no genuine material issue of fact involved. Mintz v. Mathers Fund Inc. (7 Cir. 1972), 463 F.2d 495; Molinos de Puerto Rico Inc. v. Sheridan Towing Company, supra.

The leading case in this matter is Wirtz v. Local Union No. 125, Laborers' International Union of North America, 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1967).

While it is true that Congress intended to establish "minimal government" interference in the internal union affairs, however, Congress has felt the need to legislate setting up minimal requirements in this field. One such requirement, written into Section 401, Title 29, United States Code, Section 481, is that local unions must hold elections every three years.[1]

Section 401 of the Act, Title 29, United States Code, Section 481, imposes certain requirements with respect to the election of union officials, designed to insure democratic control of union affairs. Section 402, Title 29, United States Code, Section 482, provides for the enforcement of these requirements; subsection (a) provides that a member of a union who has either exhausted internal union remedies with respect to an alleged Section 401 violation or has attempted to do so but has not obtained a union decision within three months may file a complaint with the Secretary of Labor within one month thereafter; subsection (b) provides that the Secretary shall investigate the complaint and if he finds probable cause to believe a Section 401 violation has occurred, and has not been remedied, shall file an action against the union within 60 days; and subsection (c) provides that if the court finds a violation has occurred that may have affected the outcome of the challenged election, the court shall declare the election void and order a new election conducted under supervision of the Secretary.

██ Once a protesting union member has exhausted his union remedies and filed a timely complaint with the Secretary, it is too late to avoid government intervention. It is also too late to avoid a needless expenditure of the Secretary's limited resources. The Secretary is already involved, how deeply depending on the speed with which the Secretary has moved in the particular instance. Fleming v. McEnany (2 Cir. 1974), 491 F.2d 1353.

Congress expressed a preference for an election supervised by the Secretary as the remedy for Section 401 violations, believing that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control. Wirtz v. Local 153, Glass Bottle Blowers, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); Calhoon v. Harvey, 379 U. S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

The right of the government to investigate the breakdown of the democratic processes is clear. It is not within the power of the labor union to deprive the government of its right by compliance. The interest of the public has been called into play by failure of the local union to act. The substantial right of the Secretary cannot be capriciously brushed aside.

██ The Secretary's right to the statutory remedy of a supervised elec-

---

1. Title 29, United States Code, Section 481(b). See Hodgson v. Local 400 Bakery and Confederations, W.I.U., 491 F.2d 1348 (9 Cir. 1974).

tion cannot be defeated by any subsequent independent action of the union whether it occurs before the Secretary files an action or after. Hodgson v. Local Union 400 Bakery & Confectionery Worker's International Union of America, supra; Goldberg v. Amalgamated Local 355, 202 F.Supp. 844 (E.D.N.Y. 1962).

In Wirtz v. Local 153, Glass Bottle Blowers, Assoc. supra, this question was before the Court: Whether, in light of the objectives Congress sought to achieve, the statute may properly be construed to terminate the Secretary's cause of action upon the fortuitous event of another unsupervised election before final decision of the suit.

In answering this question, the Court stated the following 389 U.S. at pages 473–75, 88 S.Ct. at pages 649–650:

"But it is incorrect to read these provisions circumscribing the time and basis for the Secretary's intervention as somehow conditioning his right to relief once that intervention has been properly invoked. Such a construction would ignore the fact that Congress, although committed to minimal intervention, was obviously equally committed to making that intervention, once warranted, effective in carrying out the basic aim of Title IV. Congress deliberately gave exclusive enforcement authority to the Secretary, having 'decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest.' Calhoon v. Harvey, supra.

"In so doing, Congress rejected other proposals, among them plans that would have authorized suits by complaining members in their own right. And Congress unequivocally declared that once the Secretary establishes in court that a violation of § 401 may have affected the outcome of the challenged election, 'the court *shall* declare the election . . . to be void and direct the conduct of a new election

under supervision of the Secretary . . . . 29 U.S.C. § 482(c). (Emphasis supplied.)

"We cannot agree that this statutory scheme is satisfied by the happenstance intervention of an unsupervised election. The notion that the unlawfulness infecting the challenged election should be considered as washed away by the following election disregards Congress' evident conclusion that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election. That conclusion was reached in light of the abuses surfaced by the extensive congressional inquiry showing how incumbents' use of their inherent advantage over potential rank and file challengers established and perpetuated dynastic control of some unions. See S.Rep. No. 1417, 85th Cong., 2d Sess. These abuses were among the 'number of instances of breach of trust . . . [and] disregard of the rights of individual employees . . . .' upon which Congress rested its decision that the legislation was required in the public interest. Congress chose the alternative of a supervised election as the remedy for a § 401 violation in the belief that the protective presence of a neutral Secretary of Labor would best prevent the unfairness in the first election from infecting, directly or indirectly, the remedial election. The choice also reflects a conclusion that union members made aware of unlawful practices could not adequately protect their own interests through an unsupervised election. It is clear, therefore, that the intervention of an election in which the outcome might be as much a product of unlawful circumstances as the challenged election cannot bring the Secretary's action to a halt. Aborting the exclusive statutory remedy would immunize a proved violation

from further attack and leave unvindicated the interest protected by § 401. Title IV was not intended to be so readily frustrated."

In view of the foregoing, plaintiff's motion for summary judgment is hereby granted and a new election shall be held with the supervision of the Secretary of Labor.

It is so ordered.