Ray DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

AIR TRANSPORT, DISTRICT LODGE NO. 146, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Defendant-Appellee.

No. 84–1043.

United States Court of Appeals, Fifth Circuit.

March 8, 1985.

George H. Tucker, Miami, Fla., Jos. P. Manners, Washington, D.C., for defendant-appellee.

Before GEE, WILLIAMS and JOLLY, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The Secretary of Labor challenges the district court's conclusion that he lacked authority to prosecute alleged violations of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401–531 (1976), related to a union election. The district court concluded that inquiry into some of the election irregularities was beyond the scope of the Secretary's investigatory and prosecutorial authority. These irregularities did not involve the complaining union member, although they were factually similar to those involving the union member. We find the district court's interpretation of the statute unduly restrictive of the Secretary's authority, and we reverse and remand.

## I.

The Air Transport District Lodge No. 146 (District 146), of the International Association of Machinists and Aerospace Workers (IAM) is composed of twenty-six locals and represents employees of twenty-one commercial airline companies in collective bargaining and related efforts. In 1977, District 146 conducted a two-step election procedure for the following District 146 offices:

(1) District 146 Secretary-Treasurer;

(2) Executive Board Member for Braniff International Airlines;

(3) Executive Board Member for Continental Airlines;

(4) Executive Board Member for Mexicana Airlines; and

(5) Executive Board Member for Taca International Airlines.

The Secretary-Treasurer office was an at-large position, for which all District 146

Margrit Vanderryn, Dept. of Labor, Washington, D.C., for plaintiff-appellant.

members in good standing were entitled to vote. The Executive Board Member (EBM) positions, on the other hand, were voted upon only by the employees of a particular airline.

The first step in the election procedure involved a nomination or "primary" election, and the second step involved a district-wide, general election. The District 146 Bylaws entitled each of the locals to nominate, by a majority of the members voting, one person for the Secretary-Treasurer office and one person for whichever EBM positions a particular local's members were eligible to vote.[1] The names of the winners of the nomination elections were placed on a ballot for the general election.

The manner in which each local conducted its nomination election was substantially similar. At the monthly union meetings in May, members of each local nominated and voted for persons for each of the available positions. If a union member was not present at the union meeting, which typically was held in the evening, the member effectively lost his or her right to participate in the nomination process. Several members of the various locals were working the 4:00 P.M. to 12:00 A.M. shifts on the evenings during which the locals conducted the nomination elections. Neither the District 146 Bylaws nor the various locals' rules of procedure contained any provision which would enable a member working the evening shift to participate fully in the nomination election.[2]

James Kuns, an employee of Continental Airlines, was one such District 146 member who was working the evening shift on the day his local, Local 597, conducted its nomination election. Local 597 was composed exclusively of Continental Airline employ-

ees, and Local 597 members were entitled to nominate one candidate for the Secretary-Treasurer position and one for the Continental EBM position. Prior to the Local 597 nomination election, Kuns complained to the Local 597 President that the nomination process deprived members working the evening shift of the opportunity to participate in the nomination election. Kuns received no relief from the Local 597 President, and the nomination election was held as scheduled.

In May and June 1977, after Local 597 conducted its nomination election, Kuns wrote a series of letters to various union officials and argued that the nomination procedures violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e) (1976), which guarantees union members a reasonable opportunity to nominate candidates and also violated a provision of the IAM Constitution which provides every union member in good standing with the right to participate in the nomination and election of officers. In Kuns's letters to the District 146 President, the IAM International President, and the Executive Council of the IAM, he challenged the manner in which the Local 597 nomination election was conducted and argued that the procedures affected the outcome of the election for the Continental EBM position. Each of Kuns's three appeals was denied by the union. In August 1977, after the general election was conducted, Kuns renewed his challenges to the nomination election and sought to have the results of the general election declared invalid. Again he wrote to the District 146 President, the IAM President, and the IAM Executive Council, and again he was accorded no relief.

---

1. *E.g.* a local which had no members who were employed by Taca International Airlines was not entitled to nominate a candidate for the Taca EBM position.

2. Some of the locals' rules of procedure enabled members who were unable to attend the nomination election the opportunity to participate to some degree in the nomination process. Local 597, for example, allowed non-attending members to submit by mail names of persons to be included in the pool of candidates eligible to be that local's nominee for a particular office. However, only those members present at the union meeting voted in the nomination election, and the winner of the election became that local's nominee. Since the non-attending members did not vote in their local's nomination election, they could participate in the nomination process only in a highly restricted way.

Kuns then filed a complaint with the Secretary of Labor pursuant to section 402 of the LMRDA, 29 U.S.C. § 482 (1976). The Secretary instituted this civil action in April 1978, seeking to invalidate the results of the 1977 general election and to require a new election supervised by him because District 146 had failed to accommodate members who were working at the time the nomination elections were conducted. The Secretary did not limit his complaint to Kuns's desire to invalidate the elections only insofar as the elections affected the Continental EBM position. Instead, he sought to invalidate the results of the nomination and general elections for all five elected positions.

After protracted proceedings in the district court, the district court granted summary judgment for the union. The court held that the Secretary lacked authority under section 402(a) & (b) of the LMRDA to challenge the results of the election for the District 146 Secretary-Treasurer position and the EBM positions for Braniff, Mexicana, and Taca Airlines. The court reasoned that Kuns in his complaints to the union and the Secretary had not challenged the effect the infirm nomination procedures had on these offices.

## II.

### A. *Mootness*

■ The initial question we must address is whether the instant case is moot. Although neither party has raised the mootness issue, this Court is compelled to raise the issue *sua sponte*, since the issue implicates Article III case or controversy considerations. *St. Paul Fire & Marine Insurance Co. v. Berry,* 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 7, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978); *Gulf Publishing Co. v. Lee,* 679 F.2d 44, 46 (5th Cir.1982).

The election the Secretary challenges in this case occurred almost eight years ago, and the record reveals that District 146 has conducted three intervening elections for these five union offices since that time. In *Wirtz v. Local 153, Glass Bottle Blowers Association,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), the Supreme Court held that the Secretary's challenge to a union's violation of section 401 of the Act is not mooted by the "happenstance intervention of an unsupervised election." *Id.* at 474, 88 S.Ct. at 649. The Court was unwilling to immunize the next election since the officers who had achieved office because of a violation of the Act might have exerted an improper or even illegal influence in the next election. In so holding, the Court in *Local 153, Glass Bottle Blowers* did not consider whether several properly conducted intervening elections would remove the taint of the prior alleged violation of the statute. We too need not reach this question.

■ Over three years ago we stated that a nomination process similar to that employed by District 146 imposed unreasonable restraints upon the union members' opportunity to nominate candidates under section 401(e). *Donovan v. District Lodge No. 100, International Association of Machinists and Aerospace Workers,* 666 F.2d 883, 888 (5th Cir.1982). Our decision in *District Lodge No. 100, IAM* was not binding upon District 146, since District 146, while a sister district to District 100, was not a party to that action. The import of that decision, however, is clear. A union must either accommodate workers who are unable to attend a nomination meeting because of their work schedule or assert some valid reason for the failure to accommodate those members. Despite the clear meaning of our decision in *District Lodge No. 100, IAM,* counsel for District 146 and the Secretary informed us at oral argument that District 146 had not changed its nomination procedures. Accordingly, since District 146 is still conducting nomination elections in the manner challenged by the Secretary, we find that this case is not moot.

### B. *The Scope of the Secretary's Investigatory and Prosecutorial Authority Under Section 402*

■ The critical question in this case is whether the Secretary may declare the re-

sults of the election for the District 146 Secretary-Treasurer position and the EBM positions for Braniff, Mexicana, and Taca Airlines invalid and require the union to conduct a new election. District 146 initially argues that the Secretary had authority to investigate and seek to invalidate the results of the election for only the Continental EBM position, since Kuns had exhausted only that claim to the union. Alternatively, the union asserts that even if Kuns had protested the manner in which the nomination procedure affected the results of the election for the Braniff, Mexicana, and Taca positions, the Secretary nevertheless would have lacked authority to challenge those positions since Kuns was ineligible to cast votes for candidates running for those positions. We find both arguments unpersuasive.

The scope of the Secretary's authority to investigate and prosecute violations of union election procedures is governed by section 402(a) & (b), 29 U.S.C. § 482(a) & (b), of the LMRDA. Section 402(a) requires the complaining union member to exhaust the grievance procedures within the union before filing a complaint with the Secretary. Once the member has exhausted grievance procedures and has filed a complaint, section 402(b) provides that the Secretary must investigate the complaint. If the Secretary finds probable cause to believe that an election violation has occurred and has not been remedied, he must institute a civil suit to remedy the violation. Although the statute indicates that the Secretary's authority is derivative of the union member's complaint, the statute does not provide in its terms a clear answer to the question whether the Secretary is limited to prosecuting only the member's complaint.

On two occasions the Supreme Court has addressed the permissible scope of the Secretary's prosecutorial authority under section 402(a) & (b). In *Wirtz v. Local Union No. 125, Laborers' International Union of*

*North America,* 389 U.S. 477, 478, 88 S.Ct. 639, 640, 19 L.Ed.2d 716 (1968), the Secretary challenged the validity of both the general election for several union offices and a runoff election for a single union office which was made necessary by a tie vote for that office at the general election. The member who initiated the complaint with the Secretary was the losing candidate in the runoff election. In his letter of protest to the union, the member charged that his opponent was ineligible to run for office and that a number of the voters who had supported his opponent were ineligible to vote *in the runoff election.* The union member received no relief from the union so he filed a complaint with the Secretary pursuant to section 402.

The Secretary investigated the complaint and discovered that the election irregularities were far greater than the complainant had realized and affected both the runoff election and the general election.[3] The Secretary undertook to invalidate the results of both the runoff election and the general election. The union argued that the Secretary was limited to contesting the results of the runoff election only, since the complaining member had not challenged the conduct of the general election in his complaints to the union and the Secretary.

The Court rejected the union's claim that the complainant's failure to exhaust internal union procedures foreclosed the Secretary from challenging the conduct and results of the general election. In pertinent part, the Court stated:

It is true that the exhaustion requirement was regarded by Congress as critical to the statute's objective of fostering union self-government. By channeling members through the internal appellate processes, Congress hoped to accustom members to utilizing the remedies made available within their own organizations; *at the same time, however, unions were expected to provide responsible and re-*

3. For example, sixteen of the twenty-seven candidates for office in the general election, including the complainant's opponent, were ineligible to run for office, fifty of the union members who voted in the general election were ineligible to vote, and sixty of the members who voted in the runoff election were ineligible to vote. 389 U.S. at 481, 88 S.Ct. at 641.

sponsive procedures for investigating and redressing members' election grievances. These intertwined objectives are not disserved but furthered by permitting the Secretary to include in his complaint at least any § 401 violation he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint.

Id. at 484, 88 S.Ct. at 642–43 (emphasis added).

The Court also rejected the union's claim that the Secretary was limited to investigating and prosecuting only those claims specified in the member's complaint to the Secretary. The Court reasoned that

[s]uch a severe restriction upon the Secretary's powers should not be read into the statute without a clear indication of congressional intent to that effect. Neither the language of the statute nor its legislative history provides such an indication; indeed, the indications are quite clearly to the contrary.

[I]t is most improbable that Congress deliberately settled exclusive enforcement jurisdiction on the Secretary and granted him broad investigative powers to discharge his responsibilities, yet intended the shape of the enforcement action to be immutably fixed by the artfulness of a layman's complaint which often must be based on incomplete information. The expertise and resources of the Labor Department were surely meant to have a broader play.

Id. at 482, 88 S.Ct. at 641–42 (emphasis added and footnotes omitted). The Court concluded that the Secretary had authority to challenge the results and conduct of the general election because the union member's complaint to the union provided the union with adequate information which would have enabled the union to conclude that the same violations occurring at the runoff election probably occurred at the general election as well. The critical factor in Local Union No. 125, Laborers' International, was that the member's grievance

to the union gave the union fair notice of the technically unexhausted charge.

Three years after its decision in Local Union No. 125, Laborers' International, the Supreme Court re-examined the permissible scope of the Secretary's investigatory and prosecutorial authority under section 402 of the LMRDA. In Hodgson v. Local Union 6799, United Steelworkers of America, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), an unsuccessful candidate for a union office complained to the union that the incumbent violated section 401 by using union facilities and personnel to support his reelection effort. The union member received no relief from the union so he filed a complaint with the Secretary under section 402. In his complaint, the member repeated his first charge but raised for the first time an additional objection concerning a meeting attendance requirement imposed as a condition for candidacy for union office. The Secretary investigated both charges and determined that each had merit. The issue before the Court was whether the Secretary had authority to prosecute the latter violation, since the complaining union member was aware of the facts supporting that charge but had neither raised nor exhausted that charge through the union grievance procedures.

The Supreme Court held that the Secretary lacked authority to prosecute claims of which the union member was aware but failed to raise in "some discernible fashion" in his protest to the union. Id. at 341, 91 S.Ct. at 1846. The Court reasoned that any other rule would vitiate the exhaustion doctrine and needlessly conflict with Congress's stated intention to minimize governmental interference with internal union procedures. Although the Court emphasized that union members need exhaust known claims with the union before the Secretary's authority is invoked, it recognized that many complaining union members may used broad or imprecise language in their internal union protests and that these members often will lack the necessary information to be aware of the existence or scope of many election violations. In determining whether the exhaustion re-

quirement has been satisfied, therefore, the Court announced the duty of courts to "impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question." *Id.* at 341, 91 S.Ct. at 1846. The union in *Local Union 6799, Steelworkers* met this burden by demonstrating that the unexhausted claim was logically and factually dissimilar to the exhausted claim.

In this case, District 146 initially claims that the Secretary lacks authority to challenge the results of the election for all of the positions other than the Continental EBM position, since Kuns failed to exhaust grievance procedures related to these positions. Relying upon *Local Union 6799, Steelworkers*, the union argues that Kuns failed to challenge specifically the effect the infirm nomination procedure had on the other four elected positions, and that this failure necessarily deprived the union of the opportunity to consider and redress the claim.

Although Kuns in his protest letters challenged the nomination procedures because of the manner in which the procedures affected the Continental EBM position, Kuns's challenges were directed at a particular election procedure, not merely to the *effect* the procedure had on the Continental position. In his protest letters, Kuns sought to have the union provide some mechanism that would provide members who worked the evening shift the opportunity to participate in the nomination process. Kuns through his protest sought to cure the disease—the union's failure to accommodate evening shift workers, not merely one of the symptoms—the effect the violation had on the Continental EBM position. This case, therefore, is inapposite to *Local Union 6799, Steelworkers*. In that case, the complaining union member failed to raise, and therefore effectively waived his opportunity to raise, a separate violation of the LMRDA in his complaint to the union. In this case, Kuns merely failed to indicate the full effect the *sole violation* of the statute had on the array of election results.

Kuns's six letters to the union which detailed the infirmities of the nomination procedure provided the union with "fair notice" that the nomination procedure infected the results of all five elected positions. *Local Union No. 125, Laborers' International*, 389 U.S. at 481, 88 S.Ct. at 641. Moreover, the union has failed to shoulder its "heavy burden" under *Local Union 6799, Steelworkers*, of demonstrating that it could not in any way discern the existence or scope of the violation in question. 403 U.S. at 339, 91 S.Ct. at 1845; *see also Donovan v. Local Union 120, Laborers' International Union of North America*, 683 F.2d 1095, 1100 & 1101 (7th Cir. 1982); *Usury v. District 22, United Mine Workers of America*, 543 F.2d 744, 750 (10th Cir.1976). We hold, therefore, that Kuns's protest letters exhausted internal union grievance procedures with respect to all five positions involved in the nomination and general elections.

■ Our holding, however, is narrow. Our interpretation of the Secretary's authority under section 402, like the Supreme Court's in *Local Union 6799, Steelworkers*, does not authorize the Secretary to inquire into and raise all of the violations of section 401 he may discover while investigating the member's complaint. Rather, the Secretary must confine his efforts to those violations of which the union was fairly apprised. The Secretary has done so in this case.

District 146's remaining argument is that since Kuns was not entitled to vote for candidates for the Braniff, Mexicana, and Taca EBM positions, he could not have been aggrieved by the manner in which the alleged infirmities affected those positions. The union's argument reduced to its core is that Kuns lacked standing to challenge the manner in which the nomination procedure affected those three positions and therefore the Secretary lacked standing to make the same challenge.

District 146's argument imposes an additional requirement to exhaustion that is unsupported by the language of the statute and contravenes the purpose for which the exhaustion provision was enacted. There is no requirement in section 402 that authorizes only those union members who have

been personally aggrieved by a violation of section 401 to file a complaint with the Secretary. Rather, section 402(a) authorizes "[a] member of a labor organization ... [to] file a complaint with the Secretary ... alleging the violation of *any* provision" of section 401. (emphasis added). Courts consistently have interpreted section 402(a) to permit members who were not affected by a violation of section 401 to raise and challenge those violations in order to effect Congress's desire to safeguard and improve the union electoral process. *See Schultz v. Local 1291, International Longshoremen's Association,* 338 F.Supp. 1204, 1206 (E.D.Pa.), *aff'd,* 461 F.2d 1262 (3d Cir.1972); *Wirtz v. Local Union No. 57, International Union of Operating Engineers,* 293 F.Supp. 89, 91 (D.R.I.1968); *Wirtz v. National Maritime Union of America,* 284 F.Supp. 47, 58 (S.D.N.Y.), *aff'd,* 399 F.2d 544 (2d Cir.1968). Moreover, as we pointed out earlier, the Supreme Court has stated that while the Secretary's authority is to some extent derivative of the member's complaint, that authority extends beyond the member's complaint to all violations for which the union may fairly be charged with notice. *Local Union No. 125, Laborers' International,* 389 U.S. at 481, 482 & 484, 88 S.Ct. at 641 & 642. This is particularly true where, as here, the Secretary seeks to challenge the *same election procedure* that governs the election of all union officers of the union of which complainant is a member.

Finally, District 146's argument taken to its logical conclusion would never permit the Secretary or a court to invalidate a union rule that contravenes the LMRDA. The union's interpretation of section 402 would limit the power of the Secretary or a court to prohibit merely the *application* of the invalid union rule to a particular union member or group of members.[4] Such an interpretation of the Secretary's authority

is directly contrary to Congress's stated commitment that the Secretary's intervention, once warranted, would ensure the union members' right to nominate and elect candidates under section 401 would be fulfilled. *See Local 153, Glass Bottle Blowers,* 389 U.S. at 473 & n. 11, 88 S.Ct. at 649 & n. 11.

### III.

In summary, we conclude that the instant case is not moot and that the Secretary's authority extends to challenging the results of all five positions affected by District 146's nomination procedure. While there are a number of employers, there is only one union involved and it is that one union's procedure which is at issue. The district court's grant of the motion for summary judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

4. The unrealistic nature of this position is best illustrated by the union's response to the following question at oral argument:

> Q. [By the Court] It seems to be your position that even if the United States Supreme Court decided that [District 146's nomination procedure] was invalid, it would apply only to Continental, and that even though [the proce-

dure] had been declared in violation of the Landrum-Griffin Act, the union would be free to continue its practice with respect to all of its other airlines until some member of those airlines complained?

> A. [Counsel for District 146] Yes, that's correct.