683 F.2d 1095
 110 L.R.R.M. (BNA) 3183, 94 Lab.Cas. P 13,701
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
LOCAL UNION NO. 120, LABORERS' INTERNATIONAL UNION OF NORTH
AMERICA, AFL-CIO, Defendant-Appellant.
 No. 81-1929.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 15, 1982.
Decided July 21, 1982.
 
 Edward J. Fillenwarth, Jr., Fillenwarth, Dennerline, Groth & McCracken, Indianapolis, Ind., for defendant-appellant.
 William W. Taylor, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.
 Before CUDAHY, Circuit Judge, and PECK* and FAIRCHILD, Senior Circuit Judges.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 The Secretary of Labor ("Secretary") initiated this action under § 402(b) of the Labor Management Reporting and Disclosure Act of 1959 ("Act"), 29 U.S.C. § 482(b), to invalidate the June 25, 1977 election for the office of Secretary-Treasurer of Local No. 120 of the Laborers' International Union of North America ("Local"). The Secretary alleged that, by imposing an unreasonable qualification for office in violation of § 401(e) of the Act, 29 U.S.C. § 481(e),[1] the Local had denied a member in good standing the right to be a candidate in that election. The member, Laurence L. Rose, Jr., was disqualified for the office of Secretary-Treasurer under a provision of the International's Uniform Local Union Constitution which states that a candidate for office "shall be literate and otherwise competent to perform the duties of the office for which he is a candidate."[2] Upon finding that the provision violated 29 U.S.C. § 481(e), the district court nullified the election for the office of Secretary-Treasurer and, pursuant to § 402(c) of the Act, 29 U.S.C. § 482(c) ordered a new election to be held under the supervision of the Secretary. This appeal by the Local Union followed. The issues presented are (1) whether the Local Union was given the initial opportunity to consider the validity of the competency qualification as required by § 402(a), 29 U.S.C. § 482(a) of the Act, and (2) whether "competency" is a reasonable qualification for office under 29 U.S.C. § 481(e) when it is determined prior to the election by an appointed tribunal. Several other issues, relating to the propriety of the district court's election order, have been mooted by a special election held while this appeal has been pending, in compliance with that order.[3]
 
 I. The Facts
 
 2
 On May 9, 1977, Local No. 120 held a meeting to nominate candidates for its upcoming June 25, 1977 election. At that meeting Laurence L. Rose, Jr. was nominated for the position of Secretary-Treasurer. Prior to the nomination meeting, the Local's Executive Board[4] appointed three Judges of Election[5] to screen the candidates for office. The Judges of Election received and considered a protest alleging that Mr. Rose was incompetent for the office of Secretary-Treasurer, and they subsequently disqualified him on that ground.
 
 
 3
 Following the Local's appeal procedure, Mr. Rose protested his disqualification in a May 24, 1977 letter to the International Union's General Executive Board. After a hearing on the protest, the General Executive Board denied Mr. Rose's appeal in a letter dated July 29, 1977. Mr. Rose then filed a complaint with the Secretary of Labor in accordance with the provisions of 29 U.S.C. § 482(a). The Secretary initiated this action after concluding that the prescribed qualification was unlawful under 29 U.S.C. § 481(e).
 
 II. Effect of the Special Election
 
 4
 At the threshold, we meet the question whether the intervening special election, held pursuant to the directions of the district court, moots the entire case. The Secretary, in his initial prayer for relief, sought nullification of the Local's June 25, 1977 election for the office of Secretary-Treasurer and an order requiring a new, supervised election. That relief was granted and the new election held. Because Mr. Rose lost the special election and the incumbent won, any determination by this court of the propriety of the 1977 election or of the relief ordered could not affect the parties' interests in who holds the office of Secretary-Treasurer.
 
 
 5
 However, in support of its order for a new election, the district court found the competency provision of the Local's Constitution to violate 29 U.S.C. § 481(e). This ruling is clearly not altered by a subsequent remedial election and remains binding on the Union. Therefore, the issue of the validity of the competency requirement is a live controversy subject to our determination.
 
 III. The Exhaustion Requirement
 
 6
 Section 482(a) of Title 29 requires that a union member exhaust all internal union remedies before filing a complaint with the Secretary. Exhaustion of union remedies, along with investigation by the Secretary of the member's complaint, thus becomes prerequisite to a suit by the Secretary against the union under 29 U.S.C. § 482(b). In enacting the exhaustion requirement, Congress attempted to reconcile the somewhat contradictory goals of ensuring free and democratic union elections and minimizing governmental interference with those elections. Hodgson v. Steelworkers, 403 U.S. 333, 338-39, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971); Wirtz v. Bottle Blowers Assn., 389 U.S. 463, 470-71, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968). "By channeling members through the internal appellate processes, Congress hoped to accustom members to utilizing the remedies made available within their own organization; at the same time, however, unions were expected to provide responsible and responsive procedures for investigating and redressing members' election grievances." Wirtz v. Laborers' Union, 389 U.S. 477, 484, 88 S.Ct. 639, 642, 19 L.Ed.2d 716 (1968).
 
 
 7
 Mr. Rose, the complainant, pursued his Union remedy by sending a fifteen page handwritten letter of protest to the International Union's General Executive Board.[6] In part, Mr. Rose protested the action of the Election Judges in disqualifying him on the grounds that he was not competent to perform the duties of the office. He specified that the Judges had disqualified him under Article V, Section 3 of the Local's Constitution, and protested that he was fully competent to perform the duties of the office of Secretary-Treasurer.
 
 
 8
 Any interpretation of the exhaustion requirement of 29 U.S.C. § 482 must deal with the fact that rank and file union members may fail to define their complaints clearly when they draft their internal union protests. Hodgson v. Steelworkers, 403 U.S. at 340, 91 S.Ct. at 1846 and Laborers' Union, 389 U.S. at 482, 485, 88 S.Ct. at 641, 643. The technical artlessness of a union member's complaint should not be allowed to frustrate the important interests Congress sought to protect by enacting § 481 and the § 482 enforcement provisions. Those provisions serve the interests of the union rank and file themselves by attempting to promote democratic union elections through primary reliance on internal union procedures. Union members benefit because they are each guaranteed the opportunity to participate equally in union elections. However, §§ 481 and 482 were not enacted solely for the protection of union members. A second interest Congress sought to protect was that of the public generally. Bottle Blowers Assn., 389 U.S. at 469-70, 88 S.Ct. at 647. Congress found "a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" that required legislation to "afford necessary protection of the rights and interests of employees and the public generally." 29 U.S.C. § 401(b).
 
 
 9
 To protect the union rank and file and the public in general, "Congress deliberately settled exclusive enforcement jurisdiction on the Secretary and granted him broad investigative powers to discharge his responsibilities." It is unlikely that Congress intended this duty to be limited "by the artfulness of a layman's complaint." Laborers' Union, 389 U.S. at 482, 88 S.Ct. at 641 (footnote omitted). There is "a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question." Hodgson v. Steelworkers, 403 U.S. at 341, 91 S.Ct. at 1846 (footnote omitted).
 
 
 10
 The threshold issue is whether Mr. Rose's internal Union protest was sufficient to satisfy the exhaustion requirements of 29 U.S.C. § 482(a) and to allow the Secretary to challenge the facial validity of the Union's competency requirement. The district court found that Mr. Rose's letter of protest did challenge the validity of Article V, Section 3 of the Local's Constitution. It did not, however, say outright that this provision was invalid. Mr. Rose's protest disputed his disqualification under Article V, Section 3 on the stated grounds that he was fully competent to perform the duties of Secretary- Treasurer. Generally, a challenge to the application of a rule is distinguishable from a challenge to its validity.
 
 
 11
 Hodgson v. Steelworkers, supra, does not mandate the conclusion that Mr. Rose's failure to state his challenge in terms of the validity of the competency provision precludes the Secretary from making such a challenge. In Hodgson v. Steelworkers, the Secretary's challenge to the Union's meeting attendance rule was dismissed because the Union member's "election protests to the local and international unions concerned matters wholly unrelated to the rule." 403 U.S. at 341, 91 S.Ct. at 1846. In contrast, Mr. Rose's protest dealt specifically with the rule challenged by the Secretary; exhaustion is problematic only because Mr. Rose challenged the rule's application while the Secretary challenged its validity.[7]
 
 
 12
 Similarly, Laborers' Union, supra, does not quite reach the question presented in this case. In Laborers' Union, the union member's internal protest alleged that ineligible voters had been allowed to participate in a runoff election held to decide a tie vote in the general election. The Secretary's complaint alleged the same violation in both elections and the union defended on the ground that the violation in the general election had not been pursued within the union. The Court's consideration of § 482(a) and its legislative history showed that it would be "anomalous to limit the reach of the Secretary's cause of action by the specifics of the union member's complaint," 389 U.S. at 483, 88 S.Ct. at 642, and the Court held that the Secretary could challenge both elections because the union had fair notice from the union member's protest of the runoff election that the same violation probably occurred in the general election. Id. at 481, 88 S.Ct. at 641. Although the Court's discussion of Congressional intent is relevant to the present case, its specific holding is not. In Laborers' Union, the Court held that an internal union protest of a violation in one election allows the Secretary to challenge a related election on the same ground. In the case at bar, the question is whether a member's protest of the application of a rule allows the Secretary to challenge the validity of the rule.
 
 
 13
 The Sixth Circuit faced this question in Hodgson v. Local 1299, United Steelworkers of America, 453 F.2d 565 (6th Cir. 1971). A union member had challenged the application of a meeting attendance rule in his internal union protest, while the Secretary sought to have the rule invalidated in the subsequent litigation. The court declined to adopt a per se rule that every challenge by a member to the application of a rule rendering him ineligible for office is also a challenge to the validity of the rule. The court reasoned that a union should not be required to redress a grievance not explicitly asserted by the union member and that disregarding the distinction between a challenge to a rule as applied and a challenge to a rule on its face would not further the policy of fostering internal resolution of union disputes. Id. at 575.
 
 
 14
 Although the broad per se rule rejected by the court in Local 1299 is almost certainly inappropriate, in certain situations it seems reasonable and appropriate to treat a union member's internal protest challenging application of a rule as exhausting his union remedies with respect to the rule's validity for purposes of § 482(d). Indeed, in Hodgson v. District 6, United Mine Workers, 474 F.2d 940 (6th Cir. 1973), the Sixth Circuit distinguished its decision in Local 1299 and held that a member's complaint to his union, stating that he met the requirements for office but was disqualified by the offending rule through no fault of his own, allowed the Secretary to challenge the validity of the rule. Id. at 945-47. The disqualified union office seeker in District 6 had been nominated by five locals as required by the union constitution, but the recording secretary of one of the locals neglected to mail the nominating certificate to district headquarters before the deadline had passed. The member protested to the union that he was disqualified through no fault of his own in spite of the fact that he had been duly nominated. The court held that the member was really complaining about the validity of the provision which gave the recording secretary "absolute and arbitrary power and authority to vitiate his candidacy" in spite of compliance with rules under his control. Id. at 946. The exhaustion requirements of § 482(a) were thus held to be satisfied with respect to a facial challenge to the provision.
 
 
 15
 We conclude that the case at bar presents a similar situation. As will be seen, the qualification of competency lacks an objectively determinable standard, and this deficiency is significant both for the present consideration of whether Rose's appeal within the Union fulfilled the exhaustion requirement and the later determination whether the qualification is reasonable.
 
 
 16
 Mr. Rose was at least impliedly complaining about the validity of a provision which allowed the Election Judges to exercise discretionary power over his candidacy in spite of his compliance with nondiscretionary rules. A protest against the application of a ground of disqualification, lacking a reasonably definite standard, necessarily raises the question of what the standard is and whether there really is one. The Executive Board, in dealing with Mr. Rose's appeal must have faced those questions. The Sixth Circuit in Local 1299 held to the contrary with respect to a claim that a rule containing an objectively determinable standard had been improperly applied. In such a case there is a clear distinction between a challenge to the rule as applied and a facial challenge. In the case of a vague or highly discretionary rule, however, a claim that it was wrongly applied is a sufficient challenge to its lack of a standard, for purposes of § 482(a), to allow the Secretary to challenge the validity of the rule.
 
 
 17
 A more restrictive interpretation of § 482(a) would limit the Secretary's broad remedial powers in a way contrary to the purposes of the Act. It would be unreasonable to require a union member in a case like the present one to say in his union protest that the rule is invalid.[8] Invalidity is a statutory claim, not one founded on the union constitution or bylaws. In addition, a provision of this type presents special problems. When a member is labelled "incompetent" and disqualified from running for office, disputing the findings is more natural than to claim that the rule is invalid. From a political standpoint, he must challenge the finding to preserve his chance to be elected. Even if he were aware of the distinction between challenging a rule facially and as applied, it would be politically difficult to maintain that competency is not a valid qualification for office and thus should be done away with. If the Secretary is ever to be able to challenge qualifications of this nature, the exhaustion requirement of § 482(a) must be deemed satisfied by a member's challenge to the rule as applied.
 
 
 18
 We therefore hold that Mr. Rose exhausted his Union remedies, and that the district court had jurisdiction under 29 U.S.C. § 482 to consider the Secretary's challenge to the validity of the competency provision.
 
 IV. The Competency Provision
 
 19
 We turn to the remaining question: whether the requirement that a union member shall be "competent to perform the duties of the office for which he is a candidate" is a reasonable qualification for office under 29 U.S.C. § 481(e)[9] when it is applied by a panel of union election judges. Section 481(e) provides that "every member in good standing shall be eligible to be a candidate and to hold office" subject to "reasonable qualifications uniformly imposed." The wording and legislative history of the statute shows a preference for eligibility; the allowance of "reasonable qualifications" was not to be given a broad reach. Steelworkers, AFL-CIO v. Usery, 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977) and Wirtz v. Hotel Employees, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968).[10]
 
 
 20
 Whether a particular qualification is "reasonable" and capable of uniform application under § 481(e) depends on its consistency with the purpose of Title IV of the Act. Steelworkers v. Usery, 429 U.S. at 309, 97 S.Ct. at 614. The main purpose of the Act was to prevent undemocratic practices in union governance, including a dictatorial or corrupt leadership and a disregard of the rights of the rank and file. Hotel Employees, 391 U.S. at 497-98, 88 S.Ct. at 1746 and Bottle Blowers Assn., 389 U.S. at 468-70, 88 S.Ct. at 646. Title IV of the Act was to effectuate this purpose by ensuring "free and democratic" union elections. Bottle Blowers Assn., 389 U.S. at 470, 88 S.Ct. at 647. Congress decided that through free and democratic union elections, the union members, themselves, could take the necessary steps to combat abuses of union power by their leadership. Thus, any qualifications that unduly interfere with a free choice of candidates are at cross-purposes with Title IV and are not "reasonable."
 
 
 21
 The Supreme Court has considered the reasonableness of a qualification for office under § 481(e) on two occasions. In Hotel Employees, supra, the Court invalidated a union rule that restricted eligibility for major union offices to those who held, or who had previously held, some union elective office. The rule was found not to be a "reasonable qualification" because it rendered 93% of the union membership ineligible for higher office, thus making free and democratic elections impossible. Similarly, in Steelworkers v. Usery, supra, the Court found a meeting attendance[11] rule invalid because it excluded 96.5% of the union membership from office. The Court decided that the antidemocratic effects of the rule outweighed any benefits derived from it.[12] Steelworkers v. Usery, 429 U.S. at 310, 97 S.Ct. at 615.
 
 
 22
 The Local suggests that these cases stand for the proposition that a qualification is unreasonable if it is unduly restrictive and substantially depletes the ranks of those who might run for office. While such an "effects" test strongly indicates an invalid qualification under § 481(e), the Court has not adopted a per se rule making a certain level of disqualification among the rank and file unreasonable. More importantly, the Court has not decided that the exclusionary effect of a qualification is the only criterion for finding it to be unreasonable under § 481(e). As stated above, a qualification is evaluated according to its effect on free and democratic elections. Exclusion of a high proportion of the membership is only one way a qualification may have an antidemocratic effect.[13]
 
 
 23
 The competency qualification runs afoul of the congressional mandate in favor of free and democratic elections in several respects. First, the requirement that a candidate be competent to perform the duties of the office he seeks is vague and does not provide the potential candidate with notice of the specific standards he must meet to get on the ballot. This problem is emphasized by the Secretary, to whom Congress has given a significant role in the administration of the Act, see Steelworkers v. Usery, 429 U.S. at 313, 97 S.Ct. at 616 and Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964). The Secretary has stated:
 
 
 24
 An essential element of reasonableness is adequate advance notice to the membership of the precise terms of the requirement.... Qualifications must be specific and objective. They must contain specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate. For example, a constitutional provision which states that "a candidate shall not be eligible to run for office who intends to use his office as a cloak to effect purposes inimical to the scope and policies of the union" would not be a reasonable qualification within the meaning of section 481(e) because it is so general as to preclude a candidate from ascertaining whether he is eligible and would permit determinations of eligibility based on subjective judgments. Further, such a requirement is by its nature not capable of being uniformly imposed as required by section 481(e).
 
 
 25
 29 C.F.R. § 452.53 (1981). A competency qualification suffers from the same deficiencies as the example set forth by the Secretary. The term "competent" is general and ambiguous, and when made a qualification for office does not allow a member to take steps to ensure that he will be eligible for the ballot. The qualification is antidemocratic to the extent it discourages potential candidates by its vagueness.
 
 
 26
 A second and related problem, also noted by the Secretary in 29 C.F.R. § 452.53 is the subjectivity inherent in the application of a vague and general qualification. Without further definition, a judgment that a candidate is or is not "competent to perform the duties of the office" is almost totally subjective. Therefore, the decision to disqualify is largely discretionary, even arbitrary. The question of who judges the qualification becomes vital to its reasonableness under § 481(e). In the case at bar, the decisionmakers were three Judges of Election appointed by the incumbent Board. When so much discretion is placed in the hands of those chosen by the incumbents, the possibilities for abuse are clear, and free and democratic elections are threatened.
 
 
 27
 The Local argues that any problem with biased Election Judges is remedied by the availability of a quick and fair procedure: appeal to the International Union. While the internal appellate procedure might correct some injustices, its existence does not provide certainty. The International Union is no more capable of uniformly applying the competency provision than the Judges of Election. The members of the appeal board cannot provide Union members with advance notice of the specifics of "competency," nor can they provide an objective interpretation of the provision where the Local Election Judges could not.
 
 
 28
 The vague and subjective nature of a competency qualification also brings it into conflict with the specific mandate of § 481(e) that reasonable qualifications be "uniformly imposed." In this case, the district court found "that the Judges of Election did not apply uniform guidelines in considering the competency of candidates appearing before them," and that neither the Local nor the Judges of Election "adopt(ed) any specific factors to be considered in determining the competency of a candidate under Article V, Section 3." Due to the significant role of personal judgment in determining "competency," it is unlikely that there can be uniform application of the provision. Unlike a qualification for office relating to the minimum age or the minimum length of union membership of the candidate, a competency provision cannot be applied with the precision and certainty necessary to ensure it is "uniformly imposed." A literacy requirement similar to that imposed by the Local's Constitution might be capable of uniform application if certain objective tests are administered to measure ability to read and write. A candidate's competency, on the other hand, cannot be readily determined by an objective test; a candidate's fitness for the office of union president, for example, cannot be readily determined by tests for leadership, loyalty and administrative ability. Though the office at issue in this case, that of Secretary-Treasurer, might make relevant some sort of objective test for record-keeping or accounting ability, there are no tests to evaluate the other, less tangible, qualities associated with "competency."
 
 
 29
 A final antidemocratic effect results because the competency provision prevents the membership from making just the sort of evaluation elections are intended to provide. It is certainly true, as the Local submits, that in the abstract competency is a most appropriate qualification for office. Congress intended to ensure competent office holders through the provisions of the Act. However, Congress intended that competent officers be provided through a system of free and democratic elections, not through a screening of candidates by a tribunal using a standard vague enough to allow it to veto any particular candidate.
 
 
 30
 As stated by the Court in Hotel Employees, 391 U.S. at 504, 88 S.Ct. at 1750, "Congress' model of democratic elections was political elections in this country .... (T)he assumption is that voters will exercise common sense and judgment in casting their ballots." The Local's system of having a tribunal pre-judge the competency of candidates for office does not correspond to the process of political elections. As stated by the Secretary: "In union elections as in political elections, the good judgment of the members in casting their votes should be the primary determinant of whether a candidate is qualified to hold office." 29 C.F.R. § 452.35 (1981).
 
 
 31
 We conclude that the requirement of competency, lacking an objective standard, permits arbitrary and subjective barring of candidates by the Judges of Election. By its nature it cannot be uniformly imposed, and it is likely to obstruct the democratic process intended by Congress. Accordingly, it does not qualify as a "reasonable qualification" for office under 29 U.S.C. § 481(e), capable of being "uniformly imposed."
 
 
 32
 The judgment appealed from is AFFIRMED.
 
 
 
 *
 Senior Circuit Judge John W. Peck of the United States Court of Appeals for the Sixth Circuit sitting by designation
 
 
 [1]
 This section provides, in relevant part:
 In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof.... The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.
 
 
 [2]
 Uniform Local Union Constitution of the Laborers' International Union of North America, Article V, Section 3 (1961)
 
 
 [3]
 Pursuant to § 402(d) of the Act the election was not stayed pending appeal
 
 
 [4]
 The Executive Board at that time consisted of seven members: The Local President, Vice-President, Recording Secretary, Secretary-Treasurer, Business Manager, and two other members elected by the membership
 
 
 [5]
 Once appointed, the Judges of Election were not permitted to be candidates for office. The duties of the Judges of Election were defined in Article VI, Sections 2 and 3 of the Local's Constitution
 
 
 [6]
 Mr. Rose's appeal was denied by the General Executive Board after a hearing
 
 
 [7]
 The Court in Hodgson v. Steelworkers did mention the distinction between challenging a rule as applied and on its face, 403 U.S. at 335, n.3, 91 S.Ct. at 1843, n.3, but it was in the context of the union member's complaint to the Secretary, not to the union, and it was mentioned only in passing
 
 
 [8]
 We are assuming that the internal procedure permitted a challenge to the validity of a rule
 
 
 [9]
 The Local argues that the Secretary is estopped from pursuing the claim that the competency provision is invalid because the Secretary declined to pursue a protest filed by Mr. Rose when he was disqualified on competency grounds for a 1974 election. This court has applied the doctrine of equitable estoppel against the government, but noted that it "must be applied with great caution" in such circumstances. U. S. v. Fox Lake State Bank, 366 F.2d 962, 965 (7th Cir. 1966). The doctrine may be applied against the government "where justice and fair play require it" and where "the government's wrongful conduct threatens to work a serious injustice and ... the public's interest would not be unduly damaged by the imposition of estoppel." U. S. v. Lazy F C Ranch, 481 F.2d 985, 988, 989 (9th Cir. 1973)
 In the case at bar, it would not be appropriate to apply estoppel against a private party, let alone the government. In declining to investigate Mr. Rose's protest, the Secretary set forth several grounds but did not focus on the facial validity of the competency provision and did not explicitly approve of it. The Local could not have reasonably relied on the Secretary's action on the basis of confidence in its competency provision supposedly engendered by the Secretary's action. The Local asserts it has incurred the costs of the present action and had its office of Secretary-Treasurer placed in continuous question to its detriment. However, these are not positive actions in reliance on the Secretary's position, but merely events that would not have occurred had the Secretary actually affirmed the competency provision. In addition, the action of the Secretary cannot be considered "government misconduct."
 A contrary result would offend public interest by binding the government to ill-considered positions.
 
 
 [10]
 In our view the issue is the legal propriety of the requirement, and not whether the decision of the Election Judges was a reasonable view of the facts. Mr. Rose had had a difficult time as Secretary-Treasurer in the past. He was elected in 1968, removed in 1970, reinstated in 1971, reelected in 1971, removed and reinstated in 1972, and removed again in 1973. He was disqualified by the Election Judges in 1974 on the ground of incompetence. In the 1980 regular election, he lost by a vote of 281 to 13. Appellant's brief cites much information from the record tending to show unusual and unbusinesslike conduct while in office, including failure to maintain records, failure to make timely filings of required reports, and loss of substantial funds
 
 
 [11]
 The Steelworkers International Constitution, which also bound local unions, limited eligibility for local union office to members who had attended at least one-half of the regular meetings of the local in the three years before the election. Those prevented from attending by union activities or working hours were exempted from the rule
 
 
 [12]
 The local argued that the rule encouraged meeting attendance and produced more qualified candidates by limiting eligibility for office to those who showed an interest in union affairs and who were familiar with union problems. The Court dismissed these arguments by noting that meeting attendance had not been encouraged if 96.5% of the membership were still ineligible and that free elections were the method mandated by Congress to ensure qualified candidates. Steelworkers v. Usery, 429 U.S. at 312, 97 S.Ct. at 616
 
 
 [13]
 A requirement that candidates for union district office be nominated by five locals was invalidated in Usery v. District 22, United Mine Workers of America, 543 F.2d 744 (9th Cir. 1976), because it could exclude a candidate supported by a majority of the district's members in the four largest locals. See also Shultz v. Local 1291, International Longshoremen's Association, 338 F.Supp. 1204 (E.D.Pa.), aff'd, 461 F.2d 1262 (3d Cir. 1972), cert. denied, 410 U.S. 909, 93 S.Ct. 965, 35 L.Ed.2d 271 (1973) (local union bylaw allocating offices by race held unreasonable) and Wirtz v. Local Unions Nos. 406, 406-A, 406-B and 406-C (Hoisting and Portable), International Union of Operating Engineers, 254 F.Supp. 962 (E.D.La.1966) (requirement of five years of continuous union membership for candidates for high union office held to be unreasonable due to its uniqueness)