Raymond J. DONOVAN, Secretary of
Labor, United States Department of
Labor, Plaintiff,

v.

LOCAL 25, SHEET METAL
WORKERS, AFL–CIO,
Defendant.

No. Civ–1–84–642.

United States District Court,
E.D. Tennessee, S.D.

June 12, 1985.

John W. Gill, Jr., U.S. Atty., John C.
Cook, Asst. U.S. Atty., Chattanooga, Tenn.,
for plaintiff.

S. Del Fuston, Chattanooga, Tenn., for
defendant.

## MEMORANDUM

EDGAR, District Judge.

This matter is presently before the Court
on plaintiff's motion for summary judg-
ment pursuant to Rule 56 of the Federal
Rules of Civil Procedure. This action is
brought by plaintiff under the Labor-
Management Reporting and Disclosure Act
of 1959, 29 U.S.C. § 401 *et seq.* (hereinafter
referred to as the "Act" or "LMRDA"),
and jurisdiction is conferred upon the Court
by 29 U.S.C. § 482(b). Plaintiff, upon the
complaint of Union member Parnell F.
Spradley, Sr., asserts that the defendant
Local 25, Sheet Metal Workers, AFL–CIO
(hereinafter sometimes referred to as "Lo-
cal Union") conducted an election in viola-
tion of the Act's requirement that members
in good standing of a union have a right to
be a candidate for union office, 29 U.S.C.
§ 481(e) (§ 401(e) of the Act), and that such

violation may have affected the outcome of the election.

## I. FACTS.

Parnell F. Spradley, Sr., is a member of defendant Local Union and the parent Sheet Metal Workers International Union. Spradley has been a member in good standing since 1945 and was an officer in the Local Union for a number of years. Spradley retired in March of 1982 but continued to pay full union dues until May of 1983. Thereafter, he paid a lower amount of dues for retired members. During his period of retirement, Spradley collected Social Security and a union pension. In December of 1983, Spradley returned to active employment and began to again pay full dues to his Local Union. After Spradley's return to active employment, he wrote a letter to the International President inquiring about his eligibility to run for local office as Business Manager/Financial Secretary-Treasurer in June of 1984. In a series of letters, Spradley was informed that the President's interpretation of Article 12, Section 3 of the International Union's Constitution was such that a retired member was no longer eligible to run for local union offices even if the individual returned to active employment. Spradley was declared ineligible to run for office. An election was held; Spradley protested and exhausted his internal union remedies before requesting the Department of Labor to investigate the charge of unfair denial of the right to run for office. The relevant section of the International Union Constitution forbids a retired union member on pension from running for union office.[1]

## II. ANALYSIS

■ The LMRDA seeks to insure free and democratic elections in labor unions. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 496, 88 S.Ct. 1743, 1746, 20 L.Ed.2d 763 (1968). The Act allows unions freedom to conduct their internal affairs as long as they are in compliance with the overall goal established by Congress of insuring fair and democratic representation. Section 401(e) of the Act addresses the issue of qualifications for elective union office · and, generally, requires only that a member be in good standing.[2] There is no dispute as to the facts. The sole issue in this case is whether the interpretation of the Union's Constitution by the President of the International Union that a person returning to active employment after retirement is disqualified for a union office is reasonable and sustainable under the LMRDA.

Summary judgment may be granted in the absence of any genuine issue of materi-

---

**1.** *Constitution and Ritual, Sheet Metal Workers' International Association and Affiliated Local Unions, State, District and Provincial Councils,* Article Twelve (12), Local Union Officers, Business Managers, and Business Representatives, Section 3, Qualifications, revised and amended by authority of the 36th General Convention, 1982:

"[N]o member shall be eligible to nomination, election, or appointment, nor shall he be permitted to serve as an officer, business manager, business representative, delegate, trustee or other representative of any affiliated local union unless (a) he is paying the full dues levied by such local union, (b) such dues and other obligations due the local union and this Association are paid in advance for the current month and are properly recorded on official receipts in his possession, and (c) he has established a record of continuous good standing in the local union in which he is a candidate for a period of not less than three (3) consecutive years immediately preceding his nomination, appointment or election ... nor shall he be eligible to nomina-

tion, election or appointment or permitted to serve if he is retired on pension under the provisions of the Social Security Act or Railroad Retirement Act or on a pension from this Association or any local union or council thereof or from any pension plan negotiated with employers."

**2.** 29 U.S.C. § 481(e) (§ 401(e) of the Act): "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and *every member in good standing shall be eligible to be a candidate and to hold office* (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." (emphasis added)

al fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). However, before a summary judgment may be granted in this case it must be shown: (1) that a violation of the Act occurred, and (2) that the violation may have affected the outcome of the election. *Marshall v. Office and Professional Employees Union, Local 2*, 505 F.Supp. 121, 122 (D.C.D.C.1981).

While Congress sought to avoid unnecessary intervention in union affairs, this concern was balanced by the express policy of the Act to "protect the public interest by assuring that union elections would be conducted in accordance with democratic principles." *Wirtz*, 391 U.S. at 496, 88 S.Ct. at 1746. The Act provides that members in good standing are eligible to run subject to the provisions of § 504 of the LMRDA, a section inapplicable in the present matter, and to "reasonable qualifications uniformly imposed ...," 29 U.S.C. § 481(e).

The Secretary of Labor has expanded on this provision, declaring in regulations promulgated under the statute that "qualifications ... be specific and objective. They must contain specific standards of eligibility by which any member can determine in advance whether he is qualified to be a candidate." 29 CFR § 452.53 (1984). The term "retired," by defendant's own admission, is ambiguous.

■ In the present matter, the Local Union argues that the exclusion of formerly retired members is a reasonable qualification for office and one that is uniformly imposed upon all members. While the typical unreasonable qualification is one that significantly curtails the number of individuals who might run for office, *see Donovan v. Local Union No. 120, Laborers International Union of North America, AFL–CIO*, 683 F.2d 1095, 1103 (7th Cir. 1982), there is no *per se* rule that a test based on numerical impact is the only means of ascertaining whether a rule is reasonable. Rather, qualifications must be tested in light of the congressional desire to insure free and democratic elections in unions. *Id.; see also Donovan v. Sailors'*

*Union of the Pacific*, 739 F.2d 1426, 1429 (9th Cir.1984).

Article 12, Section 3 of the International Union's Constitution purports to disqualify retired members of a union from holding elective office. The provision makes no mention that it applies to members who, in essence, "unretire" by virtue of their returning to the work force. Defendant, though, submits documents from its General Executive Committee, in the form of correspondence to Spradley, which state that the Union's inability to distinguish between individuals absolutely retired and individuals who are working but still entitled to retirement benefits by virtue of dollar limitations or other similar measures, justifies a sweeping rule which excludes all retired members from holding office.

Defendant cites for support recent cases upholding rules requiring individuals to be "working in the trade" in order to be eligible for nomination or election to office. These cases are inapposite and actually militate in favor of Spradley in the present case, who, at the relevant time, had returned to active employment, worked full time, and paid full union dues. *See Donovan v. Laborers Local 427*, 113 LRRM 3444 (N.D.Iowa 1983).

■ The defendant asserts that retired members of a union have the potential of losing interest or concern about the state of union affairs and, therefore, are less likely to provide good leadership for the union. Yet, the goal of the LMRDA is to permit the union membership to determine whether a candidate is a good leader. In *Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), the Supreme Court analyzed the impact of a mandatory attendance rule for union members seeking to be elected to office. The Supreme Court found that while over 600 members were in good standing, that is, they had paid their dues and fulfilled other qualifications pertaining to membership, 96.5% of these members were ineligible to run for office for failing to meet the attendance rule. The union in *Local 3489* asserted that the

attendance rule was necessary to insure the election of leaders who were knowledgeable about union affairs. The Supreme Court's answer was simple and succinct:

"As for assuring the election of knowledgeable and dedicated leaders, the provisions of the LMRDA express a congressional determination that the best means to this end is to leave the choice of leaders to the membership in open democratic elections, unfettered by arbitrary exclusions." *Id.* at 312.

Earlier the Supreme Court addressed the issue of the capability of union members to distinguish between qualified and unqualified candidates. The Supreme Court noted that the congressional purpose was modeled after the assumptions governing the general political system, and the court declared that a union rule, in this case one requiring that an individual have held some office previously in order to be elected to a senior union office, did not serve a beneficial purpose because:

It assumes that rank and file union members are unable to distinguish qualified from unqualified candidates for particular offices without demonstration of the candidate's performance in other offices. The Congress' model of democratic elections was political elections in this country, and they are not based on any such assumption. Rather, in those elections the assumption is that voters will exercise common sense and judgment in casting their ballots. Local 6 made no showing that citizens assumed to make discriminating judgments in public elections cannot be relied on to make such judgments when voting as union members. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 504, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968).

The statute clearly mandates a rule that makes sense, a rule that aspires to the overall purposes of the Act of insuring free and democratic elections. Factors considered in testing a rule include:

1. The relationship of the qualification to the legitimate needs and interests of the union;

2. The relationship of the qualification to the demands of union offices;

3. The impact of the qualification, in light of the congressional purpose of fostering the broadest possible participation in union affairs;

4. A comparison of the particular qualifications with the requirements for holding office generally prescribed by other labor organizations; and

5. The degree of difficulty in meeting a qualification by union members.

29 CFR § 452.36(b) (1984).

Typically, reasonable provisions will include mandatory, though not excessive, periods of prior membership and continued good standing based on the punctual payment of dues. The rules usually upheld are those which conform to this concept of good standing. *See* 29 CFR § 457.37 (1984). The emphasis in the statute and regulations is that a member be in good standing and this determination is made with reference to the statute, rather than to union rules. *See Donovan v. United Counties Carpenters District Council*, 561 F.Supp. 791, 795 (N.D.Ohio 1983), *aff'd* 735 F.2d 1363 (1984); *see also* 29 CFR § 1452.50 (1984).

■ The Court finds as a matter of law that the Union's interpretation of its Constitution so as to make retired members ineligible, even though they may have returned to active employment paying regular union dues, imposes an unreasonable qualification for one to qualify as a candidate for union office. While the Court cannot address the fourth and fifth factors above based on this record, the Court finds this unnecessary since the rule is strongly at odds with the purpose of maintaining open and democratic elections. The cases are clear that union members are the best judges of a candidate's qualifications, *Sailors' Union*, 739 F.2d at 1429–30, and, in the absence of proof that the requirement

bears any relationship to the demands of office, the rule as interpreted cannot stand.

The interpretation of the union constitutional provision violates § 401(e) of the LMRDA. Not being a reasonable qualification, the rule as applied is declared void. There being no other reason for disqualification, the Court further determines that the disqualification of Spradley may have affected the outcome of the election, especially in light of his previous tenure as an officer of the Local Union. Therefore, the Local Union is instructed to conduct new elections under supervision of the plaintiff in accordance with the dictates of the order entered simultaneously herewith, permitting the candidacy of all union members in good standing under the explicit provisions of union by-laws and rules. The plaintiff's motion for summary judgment is granted.

ENTER.