**Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**AMERICAN POSTAL WORKERS UNION, MIAMI AREA LOCAL, AFL–CIO, Defendant.**

No. 86–2106–Civ.

United States District Court, S.D. Florida, Miami Division.

Jan. 21, 1988.

William H. Berger, Atlanta, Ga., for plaintiff.

Joe Kaplan, Kaplan, Sicking & Bloom, P.A., Miami, Fla., for defendant.

**FINAL ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF**

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon the Defendant's and the Plaintiff's

respective Motions for Summary Judgment. Both parties have stipulated that no issues of fact remain to be litigated. *See* Joint Pretrial Stipulation at 5. Therefore, the disposition of this cause turns solely on the resolution of a single issue of law, to wit, whether, pursuant to 29 U.S.C. section 482(b), a union may bar a member from running for union office merely because the member previously has applied, without success, for a management position.

### Background

The facts underlying this dispute are set forth in detail in the parties' pretrial stipulation. *Id.* at 2–5. This dispute arose out of results of an election in February of 1986 for the office of Clerk Craft President in a local office of the American Postal Workers Union ("APWU"). William Allen, who had defeated Warren Pearlman for the office by a substantial margin, had applied for four "managerial or support" positions with the Post Office during the period of July, 1984 to May, 1985. Although Allen had been aware of the union provision rendering him ineligible for office at all relevant times, he ran for the position nonetheless, without disclosing his previous applications for management positions.

Pearlman subsequently protested that because of Allen's prior applications for management positions, Allen was ineligible for union office pursuant to Article 10, Section 12(b) of the APWU's National Constitution and By-Laws.[1] Upon investigation of Pearlman's charges, the Executive Board of the Local APWU decided to re-

move Allen and install Pearlman as Clerk Craft President. After taking all requisite preliminary steps, Allen filed a written complaint with the United States Department of Labor.

### Analysis

The question before the Court is whether Article 10, Section 12(b) of the APWU's Constitution (hereinafter referred to as "sec. 12(b)") violates section 401(e) of the Labor–Management Reporting and Disclosure Act (hereinafter referred to as "LMRDA"), 29 U.S.C. sec. 481(e) (1985). Section 12(b), for present purposes, renders a member ineligible for union office for a period of two years after the member applies for a management position, whether or not the application is successful. Section 481(e), on the other hand, permits unions to impose *only reasonable* qualifications as to candidate eligibility.[2] Thus, the resolution of this dispute depends upon the reasonableness *vel non* of excluding management applicants from holding a union office. This is a question of first impression.

■ The essential purpose of the LMRDA is to insure the existence of democratic elections within the labor union setting, and to prevent the entrenchment of management and other dictatorial practices. *See Steelworkers v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614–15, 50 L.Ed.2d 502 (1977); *Donovan v. Sailors' Union of the Pacific,* 739 F.2d 1426 (9th Cir.1984); *Donovan v. Local 25, Sheet Metal Workers,* 613 F.Supp. 607 (E.D.Tenn.1985). Al-

---

1. This section provides:

   Any postal employee who shall voluntarily, after August 31, 1984, hold, accept *or apply* for any managerial or supervisory position, EAS position or the PASS Program, for any period of time, whether one day or a fraction thereof, either detailed, acting, probationary or permanently, shall be ineligible to be a convention delegate and shall immediately vacate any office held by that member in the national, local, area local, district council, state or regional organization, any department of the APWU, the Postal Press Association, or any subordinate body of the APWU which receives financial support or uses the name of the American Postal Workers Union. Further, upon termination of such supervisory status, such member shall be ineligible

   for election to any office or delegate position for two years. Upon nomination, the candidate must certify that he/she has not served in a managerial or supervisory capacity for the 24–month period prior to the nomination or since August 31, 1984, whichever is a longer period of time.

   (emphasis added).

2. Section 481(e) provides, in relevant part, "In any election ... every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to *reasonable qualifications* uniformly imposed) ..." *Id.* (emphasis added). Section 504 essentially prohibits convicted felons from serving in a union in an official capacity. This section is irrelevant for our purposes.

though Congress has articulated a policy disfavoring unnecessary governmental entanglement in union affairs, this policy is to be read in light of the LMRDA's express purpose of protecting "the public interest by assuring that union elections ... be conducted in accordance with [such] democratic principles." *Wirtz v. Hotel, Motel and Club Employees Union,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (quoted in *Local 25, Sheet Metal Workers,* 613 F.Supp. at 609). As long as the union acts reasonably in imposing eligibility limitations, the government will not interfere. *See Wirtz v. Glass Bottle Blowers,* 389 U.S. 463, 471, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968); *cf. United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 117, 102 S.Ct. 2339, 2348, 72 L.Ed.2d 707 (1982). Although "reasonableness" is a term susceptible of divergent interpretations, it is clear that in the situation before us, the term is to be construed narrowly.[3] To the extent that an eligibility limitation unduly interferes with the purpose of the LMRDA, it is unreasonable and void under the Act. *Donovan v. Local Union No. 120, Laborers' International Union of North America,* 683 F.2d 1095 (7th Cir.1982).

■ It is beyond dispute that a union may bar union members actually serving in a managerial capacity from holding a union office. *See* 29 C.F.R. section 452.47 (1987). This power, however, is subject to the limi-

tation that a reasonable basis exist for believing that the person involved would be subject to a conflict of interest between those duties owed to management and those owed to the union membership.[4]

■ By extension, then, the eligibility limitation under scrutiny can only survive to the extent that a reasonable basis exists for the belief that one who merely applies, but does not serve, in a managerial capacity is subject to such a conflict of interest. In section 452.47, the Department of Labor did not go so far as to say that it was reasonable per se to bar one *actually serving* in a managerial capacity from office. Section 12(b), however, treats as reasonable per se the barring of a union member from candidacy merely for *applying to serve* in such a capacity.

The Union attempts to characterize this situation as one rising to the level of a conflict of interest. The Union contends that Allen's expressed desire to serve in management of itself renders him incapable of representing the interests of rank and file union members as against management because he would tend to seek favor with those who make managerial hiring decisions. By thus describing its concern, however, the Union disproves that which it asserts. In Labor Regulation 452.47, the Department of Labor clearly limited its approbation of candidacy prohibition to those circumstances in which an official *in fact*

---

**3.** In *Wirtz v. Hotel, Motel and Club Employees Union,* the Supreme Court noted:

Congress plainly did not intend that the authorization in [section 481(e)] of "reasonable qualifications uniformly imposed" should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording that "every member in good standing shall be eligible to be a candidate and to hold office ..." This conclusion is buttressed by other provisions of the [LMRDA] which stress freedom of members to nominate candidates for office.

\* \* \* \* \* \*

It follows therefore that whether [a union provision] is a "reasonable qualification" within the meaning of [section 481(e)] must be measured in terms of its consistency with the Act's command to unions to conduct "free and democratic union elections.

391 *U.S.* at 499, 88 S.Ct. at 1748.

**4.** This Department of Labor regulation provides:

Inasmuch as it is an unfair labor practice under the Labor Management Relations Act (LMRA) for any employer (including persons acting in that capacity) to dominate or interfere with the administration of any labor organization, it follows that employers, while they may be members, may not be candidates for office or serve as officers.... Whether a restriction of office holding by members who are group leaders or others performing some supervisory duties is reasonable depends on the particular circumstances.... An overall consideration in determining whether a member may fairly be denied the right to be a candidate for union office as an employer or supervisor is whether there is a reasonable basis for assuming that the person involved would be subject to a conflict of interest in carrying out his representative duties for employees and rank and file union members. 29 C.F.R. section 452.47 (1987).

owes duties to incompatible bodies of constituents. Most employees seek favor with their employers; this is a natural function of the nearly universal desire of self-advancement. To hold that such a rational desire constitutes a conflict of interest would be to afford too much credence to the speculative. Under this rationale, anyone harboring a *desire* to be promoted would be ineligible for union candidacy even prior to application. Case law interpreting the LMRDA makes clear that the Court is to read the word "reasonable" narrowly so as to afford maximum protection to the purposes of the Act. Accordingly, this Court is of the opinion that grounding Allen's ineligibility upon so speculative a conflict of interest is patently unreasonable and, in fact, disingenuous.

The Court believes that the Union's position arises out of an overly antagonistic posture toward those who would run the Union with an ardor or fervor qualitatively different from their own. Local Union President Judy Johnson stated at the 1984 International Convention which adopted the Union provision in question, "It is also not enough to say that when somebody finally secures a management position, then their position should be vacated. When that individual *thinks* about going into management, they should give up that position, because they have displaced loyalty." (emphasis added).

As the Supreme Court noted in *Steelworkers v. Usery*, 429 U.S. 305, 309, 97 S.Ct. 611, 615, 50 L.Ed.2d 502 (1977), one of the purposes of the LMRDA is to guarantee that union leadership not entrench itself to the exclusion of other leaders that might emerge from a free and democratic election. Certainly, there is little difference between entrenching oneself and entrenching only those who share one's spe-

cific philosophy of union management, etc. This patently unreasonable limitation of eligibility is exactly what Congress contemplated preventing in the LMRDA.

Moreover, applying factors set forth by the Labor Department for assessing the reasonableness of a qualification for union office further demonstrates that the union provision is unreasonable.[5] In *Donovan v. Local 25, Sheet Metal Workers*, 613 F.Supp. 607 (E.D.Tenn.1985), the District Court referred to these factors in reviewing a union provision barring from office previously retired union members who had returned to active employment and were members of good standing. The court found the provision at odds with the purpose of the LMRDA and unreasonable, noting that typical "reasonable" provisions include the requirement of a reasonable minimum union membership period or a record of punctual payment of union dues. Similarly, in the case at bar, this Court finds that the union provision bears no relationship either to legitimate union needs and interests or to the demands of union office. Additionally, the provision unnecessarily impinges upon the "broadest possible participation in union affairs." Finally, the provision forces a union member to chose between two possible goals, before he knows whether either or both is within his grasp. While the Court shares the concern that, to the extent a real conflict exists, a manager ought not serve as a union official, forcing an individual to make such a serious election before the conflict arises is unduly restrictive and difficult and thus runs afoul of the Department of Labor's guidelines. Accordingly, this Court finds that the Union removed Allen from office pursuant to a union provision that is patently unreasonable and violative of the LMRDA, both facially and as applied.

---

5. These factors include:
    (1) The relationship of the qualification to the legitimate needs and interests of the union;
    (2) The relationship of the qualification to the demands of union office;
    (3) The impact of the qualification, in the light of the Congressional purpose of fostering the broadest possible participation in union affairs;
    (4) A comparison of the particular qualification with the requirements for holding office generally prescribed by other labor organizations; and
    (5) The degree of difficulty in meeting a qualification by union members.
29 C.F.R. section 452.36 (1987).

Therefore, the Court revalidates the original election pursuant to which Allen obtained the office of Clerk Craft President of the APWU. *See McDonald v. Oliver*, 525 F.2d 1217, 1230–32 (5th Cir.1976).

The Union's argument that Allen failed to disclose his previous applications despite his knowledge of the provision in question is not well-taken. The Union has not demonstrated the existence of any duty that compelled Allen to make such a disclosure. In any case, inasmuch as the Court is of the opinion that the limitation was unreasonable, Allen's failure to have honored it is of no moment. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment is GRANTED, and that the Defendant's Motion for Summary Judgment is DENIED. The Plaintiff is further ORDERED to submit a final judgment to the Court within 10 days of the date of this Order.