**Elizabeth DOLE, Secretary of Labor, Plaintiff,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Defendant.**

**Civ. A. No. 88–2743.**

United States District Court,
District of Columbia.

March 30, 1989.

Molly D. Current, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Richard Kirschner, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This case comes before the Court on cross-motions for summary judgment. The plaintiff is the Secretary of Labor of the United States Department of Labor. She brings the action under Title IV of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA" or "the Act") to challenge certain of the defendant union's bylaws affecting an election of its officers in June, 1988. The challenge arises from the union's exclusion, pursuant to the union constitution, (hereinafter "bylaw"), of Dominic J. Badolato from running for re-election as an International Vice President on the grounds that he had attained the age of 65 years or older in the calendar year preceding the election.

### A. Jurisdiction.

The Court's jurisdiction is found in 29 U.S.C. § 482(b). The Labor–Management Reporting and Disclosure Act authorizes a union member to complain to the Secretary about a union's officer election, alleging a violation of section 481, within a month after exhausting his internal union remedies. In this instance, Badolato was barred from running for election on June 23, 1988. After exhausting his internal union remedies, he filed his complaint with the Department of Labor on July 5, 1988. The Secretary investigated the complaint, found probable cause to believe that a violation of the subchapter occurred, and filed a complaint in this court within the requisite time period (an extension having been consented to by defense counsel).

The issue before the Court is whether the AFL–CIO's restriction on eligibility for high union office to those under age 65 is a "reasonable qualification" for office under LMRDA, 29 U.S.C. § 481(e), which provides that:

In any election required by this section ... a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to § 504 of this title and

to reasonable qualifications uniformly imposed) ...

### B. Arguments of the Parties.

The union urges that its bylaw is reasonable because it is designed to ensure that the composition of the leadership reflects that of the union's membership and that, in fact, it excludes only a tiny percentage of the electorate. The union points out that in this particular case, Mr. Badolato held his office for 18 years prior to his disqualification and claims that prohibiting the election of older workers ensures that officers do not become entrenched in office. This prohibition, then, is claimed to be in harmony with the purposes of LMRDA because it insures fair, democratic elections. Accordingly, government interference in the election would in this case be an unnecessary intrusion into internal union affairs.

The Department of Labor urges that union members are competent to choose, by their votes, to throw out those officers who are "unrepresentative" of the union electorate, and that the choice should not be made for them by a broad prohibitory rule excluding older workers. It further urges that defendant had notice before the election that the Department of Labor prohibited age discrimination in union elections, that this regulation, 29 CFR § 452.46 (1988)[1], is entitled to judicial deference, and that the Court should read the LMRDA in harmony with the Age Discrimination in Employment Act. Finally, it contends that there is no "fit" between the union's stated goal of stimulating new

membership on its elective boards and the union's bylaw, because the union does not limit the number of consecutive terms one person may serve.

### C. Analysis.

This union election appears to be a far cry from the glaringly undemocratic and entrenched election procedure set aside in the lead case dealing with "reasonable requirements" under the LMRDA, *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). In that case, only 1,725 of the 27,000 union members were eligible to run for the May 1965 election, whereas the restriction at issue in the instant case limits fewer than 2.8% of defendant's members. The leading case in this Circuit also concerned a high percentage excluded. *Doyle v. Brock*, 821 F.2d 778 (D.C.Cir.1987) (97% disqualified; Secretary's decision not to sue was arbitrary and capricious).

At bottom, however, it is not the magnitude of the effect at issue, but whether or not the election conforms to § 481(e)'s requirement that *"every member in good standing shall be eligible to be a candidate and to hold office* (subject to § 504 of this title and to reasonable qualifications uniformly imposed)." Mr. Badolato was excluded on the basis of his age, and the bylaw is a straight forward violation of the Act and implementing regulation previously cited, which is entitled to deference.

---

**1.** 29 CFR Ch. IV, Subpart E synthesizes existing law regarding what constitutes a reasonable qualification, and provides guidelines for what is reasonable and what is not. Reasonable restrictions may relate to a period of prior membership in the union or continuous good standing in the union. Restrictions based on personal characteristics of a candidate are much less likely to be appropriate:

A labor organization may establish certain restrictions on the right to be a candidate on the basis of personal characteristics which have a direct bearing on fitness for union office. A union may, for example, require a minimum age for candidacy. However, a union may not establish such rules if they would be inconsistent with any other Federal law. Thus, it ordinarily may not limit eligibility for

office to persons of a particular race, color, religion, sex, or national origin since this would be inconsistent with the Civil Rights Act of 1964. [Citation omitted] *Nor may it establish a general compulsory retirement age or comparable age restriction on candidacy since this would be inconsistent with the Age Discrimination in Employment Act of 1967, as amended.* A union may not require candidates for office to be registered voters and to have voted in public elections during the year preceding their nominations. Nor may it require that candidates have voted in the previous union election to be eligible. Such restrictions cannot be said to be relevant to the members' fitness for office. (Emphasis added).

As the Supreme Court and the Courts of Appeals have frequently stated, the "reasonable qualifications" modification on the right of every member in good standing to run for office is not to be given broad reach. *See, Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), quoting *Wirtz v. Hotel Employees*, 391 U.S. at 499, 88 S.Ct. at 1748; *Donovan v. Local Union No. 120, Laborers' Int'l Union of North America*, 683 F.2d 1095, 1102 (7th Cir. 1982).

The Department is correct in stating that age should not serve as a proxy for entrenched leadership, particularly in light of the strong public policy, as evinced in the Age Discrimination in Employment Act, against restricting older, qualified workers, particularly those, like Mr. Badolato, who are under 70. More importantly, rooting out entrenched authority per se was not Congress' goal, though it has become a shorthand for it. Congress' intent was stated in the statute: "every member in good standing shall be eligible to be a candidate and to hold office," and is evidenced in a legislative history focused more on *corrupt* leadership that entrenches itself by excluding others. *Hotel Employees*, 391 U.S. at 497–499, 88 S.Ct. at 1746–1748. Viewed in this light, the restriction makes less sense, as there is certainly no automatic connection between age and corruption, and unlimited tenure may be dealt with by appropriate bylaws limiting length of service in office.

The plaintiff is entitled to summary judgment due to the inadequate fit between goal of preventing entrenched, corrupt leadership and excluding those over age 65 from running for office. Defendant has not asserted that older workers are unable to meet the demands of the office, or that age restrictions are found throughout comparable unions to be necessary for truly free elections. 29 C.F.R. § 452.36(b).[2] Recent cases have scrutinized this "fit" carefully, indeed. Summary judgment was granted for the Department when a union's rules provided that a member was not in "good standing" (and thus unable to run for office) after retirement, despite the union's contention that the retirees have the potential of losing interest or concern about the state of union affairs. *Donovan v. Local 25, Sheet Metal Workers*, 613 F.Supp. 607 (E.D.Tenn.1985). The Department of Labor also was granted summary judgment when a union prohibited candidates who had *applied for* a management position within the preceding two years, despite the unquestioned ability of unions to restrict managers from serving in union offices. *McLaughlin v. American Postal Workers Union*, 680 F.Supp. 1519 (S.D.Fla.1988).

### D. Remedy.

The LMRDA requires the Court to declare the challenged election void and to order the defendant to conduct a new election under the supervision of the Secretary of Labor, if the Court finds that a violation of Title IV of the LMRDA "may have affected the outcome of an election." 29 U.S.C. § 482(c). When an unlawful candidacy qualification has been found, the burden is on the union to show that the violation did not affect the outcome. *Wirtz v. Hotel Employees*, 391 U.S. at 506–507, 88 S.Ct. at 1751–1752.

---

**2.** Some factors to be considered, therefore, in assessing the reasonableness of a qualification for union office are:

    (1) The relationship of the qualification to the legitimate needs and interests of the union;

    (2) The relationship of the qualification to the demands of union office;

    (3) The impact of the qualification in the light of the Congressional purpose of fostering the broadest possible participation in union affairs;

    (4) A comparison of the particular qualification with the requirements for holding office generally prescribed by other labor organizations; and

    (5) The degree of difficulty in meeting a qualification by union members.